Anna HIMMLER and Carl Fidorra, Individually and on behalf on all other parties similarly situated, Plaintiffs,

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare, and Michigan Hospital Service, Defendants.

Civ. A. No. 39294.

United States District Court,
E. D. Michigan, S. D.

Oct. 15, 1976.

Alan W. Houseman, Michigan Legal Services, Detroit, Mich., for plaintiffs.

Philip Van Dam, U. S. Atty., Michael D. Gladstone, Asst. U. S. Atty., Detroit, Mich., for defendants.

## MEMORANDUM OPINION

GUBOW, District Judge.

The court has before it defendant CASPAR WEINBERGER's, Secretary of Health, Education and Welfare, motion for judgment on the pleadings or, alternatively, for summary judgment, and plaintiffs' motions for designation of this action as a class action and for summary judgment.

This case challenges certain procedures used to determine eligibility for Medicare benefits. Each named plaintiff was denied such benefits for a portion of inpatient medical care each had received on the ground that that portion was not medically necessary, despite prior contrary findings by the committing physicians and review committees established for this purpose by the institutions providing care. Plaintiffs contend alternately that the prior findings are conclusive or that they may not be overridden without a prior hearing. Administrative review has not been exhausted.

In a memorandum opinion and order issued in January, 1976, this court held that jurisdiction was proper under the mandamus statute, 28 U.S.C. § 1361, unless precluded by 42 U.S.C. § 405(h), and requested that the parties brief the import of section 405(h) in view of the Supreme Court's decision in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). *Salfi* was issued after the briefs in this case had been submitted. The court's January, 1976, opinion did not reach the merits of this action. Another Supreme Court decision of import in this case, *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), was decided while briefing by the parties on *Salfi* was taking place. The parties have also submitted briefs on *Eldridge.* The court has considered these briefs along with the various other pleadings, motions, affidavits and exhibits submitted and is of the opinion that the decision in *Eldridge* establishes jurisdiction, and that, for the reasons set forth in this memorandum decision, summary judgment in defendant's favor must be denied, plaintiffs' motion for designation of this action as a class action must be granted, and plaintiffs' motion for summary judgment must also be granted.

## I. JURISDICTION AND THE CLASS ACTION

Section 405(h), 42 U.S.C., where applicable, appears to preclude jurisdiction except under section 405(g) which, in turn, appears to require exhaustion of administrative remedies. In *Eldridge,* disability benefits, previously awarded the claimant,

were terminated upon a finding that his disability had ceased. Forsaking administrative procedures that would ultimately have led to a hearing, Eldridge sued to establish a constitutional right to a pretermination hearing. The Supreme Court held that section 405(g) jurisdiction first required that "a claim for benefits shall have been presented to the Secretary," 424 U.S. at 328, 96 S.Ct. at 899, a requirement here met by the named plaintiffs. The Court then held that "the denial of Eldridge's claim to continued benefits was a sufficiently 'final decision' with respect to his constitutional claim to satisfy the statutory exhaustion requirement" of section 405(g); it therefore did not reach the question whether mandamus jurisdiction was precluded by section 405(h). 424 U.S. at 330, 96 S.Ct. 893, at 900. On this point, the Court's reasoning was two-pronged. It first stated that "Eldridge's constitutional challenge is entirely collateral to his substantive claim of entitlement." *Id. Salfi,* by contrast, had claimed that the statutory definition of persons entitled to benefits was limited in a manner denying equal protection of the law. His attack was thus substantive, not procedural. Moreover, the Court stated: "A claim to a predeprivation hearing . . . rests on the proposition that full relief cannot be obtained at a postdeprivation hearing" because "an erroneous termination would damage [the claimant] in a way not recompensable through retroactive payments." 424 U.S. at 331, 96 S.Ct. at 901. As this proposition was at least colorable, it was possible that a post-termination hearing, whatever its outcome, would result in the very injury plaintiff's suit sought to prevent. In such a case, section 405(g) was held not to require that the claimant exhaust all levels of administrative appeal before presenting his claim to the courts. *Salfi* was distinguished in that there, a further administrative determination might rest on grounds mooting the constitutional question and the time spent obtaining that determination would not work irrecompensable harm.

The claim of the named plaintiffs in the case now before the court is like Eldridge's.

They assert a procedural right. It is true that they claim benefits only with respect to medical care already rendered, while the *Eldridge* and *Salfi* claimants asserted that additional continuing benefit payments would be due them for each day consumed by administrative appeals. However, there is "at least a colorable claim" that continued denial of the lump sum sought works continuing hardship. This is the essence of Eldrige's second prong, and jurisdiction of the claims of the named plaintiffs is hence proper under section 405(g).

With regard to the named plaintiffs, then, the question whether section 405(h) precludes reliance on other jurisdictional sources is thus mooted.

Rule 23, Fed.R.Civ.P., provides the applicable standards for determining whether a suit can be maintained as a class action. As a prerequisite to the declaration of any lawsuit as a class action, a plaintiff must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Because the plaintiffs in this case seek declaratory and injunctive relief, they must also show that the Secretary

> has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . .

■ The defendant argues that plaintiffs cannot adequately protect the interests of the class because the named plaintiffs have not shown that common questions of law and fact exist between them and the class they seek to represent. However, the plaintiffs need only show that a common question of law or fact exists, they need not show both. *Cottrell v. Virginia Electric & Power Co.,* 62 F.R.D. 516, 519–20 (E.D.Va. 1974). Furthermore, it has been held that

the commonality requirement is satisfied "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Am. Finance System Inc. v. Harlow*, 65 F.R.D. 94, 107 (D.Md.1974), citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964), and other cases.

■ The plaintiffs seek to represent a class composed of

all persons in Michigan sixty-five years of age or older who are eligible for medicare and having received inpatient hospital care, have been recommended by the attending physician or the utilization review committee within the hospital for further inpatient care or for transfer to an extended care facility for continued care and treatment, or to a home health care situation, and whose eligibility for such continued services under the medicare program has been, is being or may be, under 20 CFR 405.702 et seq. terminated by Michigan Blue Cross without notice or an opportunity for a prior hearing.

Complaint ¶ 19, at 9 (November 30, 1972). The question of law common to all these class members is whether or not the Social Security Act and the due process clause of the Fifth Amendment require that the Secretary provide notice and an opportunity for a hearing before plaintiffs, and the class they seek to represent, can be declared ineligible for the payment of Medicare benefits for medical and nursing care. There is no need, as defendant argues, to attempt a finding of fact with respect to each member of the class to ascertain whether the benefits received were covered by Medicare—it is only important that each class member be denied, without notice or a hearing, Medicare benefits for treatment that had been certified by the class member's physician and utilization review committee as medically necessary.

As to the other prerequisites enumerated in Rule 23, plaintiffs have adequately demonstrated the requisite numerosity that they, as representatives, can fairly and adequately protect the interests of their fellow class members, and that the defendant has "refused to act on grounds generally applicable to the class" making injunctive and declaratory relief appropriate. *See Frost v. Weinberger*, 375 F.Supp. 1312, 1317–18 (E.D.N.Y.1974), *rev'd on other grounds*, 515 F.2d 57, 64–65 (2d Cir. 1975).

The plaintiffs' request that this action be certified as a class action is, therefore, granted.

## II. MERITS OF PLAINTIFFS' CLAIM

Plaintiffs' cause of action raises two issues:

(1) whether or not a physician's certification and an assessment of a utilization review committee of a skilled nursing facility as to medical necessity of certain treatment is conclusive and establishes, at least preliminarily, plaintiffs' entitlement to payment for treatment received; and

(2) whether or not a right to a hearing prior to an administrative determination denying coverage for skilled nursing facility services and commensurate reimbursability is constitutionally required.

The benefits in question in this action arise from the program of medical insurance for persons over sixty-five, popularly known as Medicare, 42 U.S.C. § 1395 et seq. Part A of this statutory scheme provides that benefits are to be financed by employer and employee payments made into a Federal Hospital Insurance Trust Fund which was established under 42 U.S.C. § 1395i(h).

A person sixty-five years old becomes eligible under the Act and is entitled to payments made on his or her behalf from the hospital insurance trust fund to pay for: (1) inpatient hospital services for up to 150 days during a spell of illness; (2) post-hospital extended care services for up to 100 days during any spell of illness; and (3) post-hospital home health benefits for up to 100 visits. 42 U.S.C. § 1395d.

■ Payments for post-hospital extended care services, which plaintiffs were claiming here, do not include coverage of care in

a nursing home when the care is only custodial rather than skilled. 42 U.S.C. § 1395y(a)(9). The type of care needed by a patient, custodial or skilled, is a question of fact to be determined in every case. Under the statute, however, receipt of Medicare benefits for extended care services is conditioned upon certification and periodic recertification by the patient's doctor that skilled care is medically necessary. 42 U.S.C. § 1395f–(a)(2). The patient's physician is required to certify that the patient is, in fact, ill enough to need the services of a hospital or extended care facility, and that the care needed will be that skilled type of medical care expected to be found in the institution. This determination by the patient's physician must be made at the earliest stage in which the individual patient enters the Medicare process.

Furthermore, the extended care facility providing care to the patient must have a Utilization Review Committee, composed of at least two physicians, which also periodically reviews whether the individual patient continues to need skilled nursing care, 42 U.S.C. § 1395x(j)(8), and makes certain that the provider utilizes its facilities correctly. 42 U.S.C. § 1395x–(k)(2). The statutory scheme also requires that, as soon as a Utilization Review Committee decides that a patient no longer requires skilled nursing care, the committee must immediately notify the patient, the attending physician, and the facility to that effect. 42 U.S.C. § 1395x–(k)(4). Medicare payments would continue for four days from the receipt of such notice by the facility, 42 U.S.C. § 1395f(a)(7), thus allowing the patient time to either leave the provider or to stay at his own expense.

Generally, after the patient has left the hospital, the provider submits the bill for payment to the fiscal intermediary (such as Michigan Hospital Service) which has entered into a signed agreement with the Social Security Administration. 42 U.S.C. § 1395h(a). If the intermediary refuses to pay the provider, the beneficiary can request a reconsideration without a hearing. 20 C.F.R. § 405.702. If the beneficiary is dissatisfied with the reconsideration, he or she may request a hearing. 20 C.F.R. § 405.710. There is no time limit set by the regulations for hearings or by the relevant statute, 42 U.S.C. § 405(b). After exhausting appeals within HEW, the beneficiary may appeal to a federal district court. 42 U.S.C. § 405(g).

With this background in mind, the court turns to the merits of these motions for summary judgment.

The defendant Secretary argues that a holding by this court making the determination of a physician and the utilization review committee on the medical necessity of continuing post-hospital extended care conclusive of the Secretary's determination of Medicare coverage of such services would render useless the Secretary's statutory function as trier of fact under section 405, 42 U.S.C., which is mentioned in section 1395ff(b), dealing with determinations and appeals concerning entitlement to benefits. The court disagrees. Section 1395d(a), 42 U.S.C., provides, in relevant part, that

> [t]he benefits provided to an individual by the insurance program under this part shall consist of entitlement to have payment made on his behalf . . . .

In other words, the benefit of the program is that the person eligible under it will become entitled to the payment of his or her medical bills at some time before they are actually paid out of the Federal Hospital Insurance Trust Fund. The question becomes: When does this entitlement "vest"? Sections 1395f(a)(3), (7), 42 U.S.C., provide, in relevant part:

> (a) . . . payment for services furnished an individual may be made only to providers of services which are eligible therefore under section 1395cc of this title and only if—
>
> .    .    .    .    .
>
> (3) . . . a physician certifies that such services are required to be given on an inpatient basis for such individual's medical treatment, or that inpatient diagnostic study is medically required and such services are necessary for such purpose . . . , [and]

(7) . . . a finding has not been made pursuant to the system of utilization review that further inpatient hospital services or further post-hospital extended care services, as the case may be, are not medically necessary. . . .

Thus, the individual seeking care has met all the conditions of section 1395f when his or her physician and the review committee have certified the services are medically necessary. At this point, the fiscal intermediary, e. g., Blue Cross, is empowered to "determine the amount of payments due upon presentation of provider bills and make the payments," as well as "perform one or more of certain administrative duties other than the payment function." S.Rep. No. 404, 89th Cong., 1st Sess., U.S.Code Cong. & Admin.News, pp. 1943, 1993 (1966). Whether or not the fiscal intermediary may review the medical judgment of the physician or the review committee is a question not now before the court (for one commentator's opinion that it cannot review this medical judgment, see S. Law, *Blue Cross: What Went Wrong?* 121–25, 223–24 n. 675 (1974)), rather, the court need only find that entitlement has vested with the physician's and the review committee's certification.

■ In the case now before the court, an initial determination of plaintiffs' eligibility was made by both their physicians and the review committees. On this basis, the plaintiffs chose to go ahead with the treatment recommended—the time to inform the plaintiffs their claims could be denied by the Secretary was not months after their treatment had ceased. The legislative history of the 1965 amendments to the Social Security Act indicates that the function of the review committee in the Medicare scheme was to be "carried out in a manner which protects the patients while at the same time making certain that they remain in the hospital only so long as is necessary . . ." and that the "physician is to be the key figure in determining utilization of health services— . . . that it is a physician who is to decide upon admission to a hospital, order tests, drugs and treatments, and determine the length of stay." S.Rep. No. 404, 89th Cong., 1st Sess., U.S.

Code Cong. & Admin.News pp. 1943, 1986–87 (1966). With these two congressional motives in mind—the physician's importance in determining medical necessity and protection of the patient—it would be a strange holding indeed that gave no importance, in terms of statutory entitlement to benefits, to the determination of the patient's physician and the review committee. Yet, holding as the defendant would have us do—that the Secretary, irrespective of prior determinations by the physician and review committee, could summarily deny payments for benefits without a pretermination hearing of any sort—would work an emasculation of the powers of the physician and review committee that is contrary, in the court's opinion, to legislative intent. Therefore, when the plaintiffs' physicians and the review committees certified plaintiffs' treatment, an initial entitlement to payment of those benefits had vested and could not be taken without notice and a pretermination hearing. The next question is whether a pretermination hearing is mandated by the Social Security Act itself, the Constitution, or both.

The appeals section of the Medicare statute, 42 U.S.C. § 1395ff, requires that administrators of the Medicare program provide adequate notice and a timely hearing for individuals who have been detrimentally affected by adverse administrative determinations. The dissatisfied individual is entitled to a hearing, the formalities of which are to be co-extensive with those set forth in 42 U.S.C. § 405(b). Section 405(b) requires that the Secretary of HEW

make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Upon request by any such individual . . . who makes a showing in writing that his or her rights may be prejudiced by any decision the Secretary has rendered, he shall give such applicant . . . reasonable notice and opportunity for a hearing with respect to such decision, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse his findings of fact and such decision.

Thus, the statute itself provides that "reasonable notice and opportunity for a hearing" be given to the person seeking payment of benefits.

■ In the case of the named plaintiffs in this action, no reasonable notice was given by the Secretary because notice that the benefits would not be payed by Medicare came after the treatment had been given. The hardship this imposes upon an elderly person, no longer drawing a working income, is quite substantial and, furthermore, such a retroactive determination could result in the deprivation of essential health care in the interval between termination and a hearing at which the person can prove his or her need. Specifically, plaintiffs' cases involve the Secretary's review procedures governing determinations of the amount of benefits. Under these regulations, a patient may not apply for an initial determination of the amount of his Medicare benefits until the medical care is already given and a bill is accrued. 20 C.F.R. § 405.701. These regulations are contrary to the Social Security Act, however, if they do not allow for reasonable notice and opportunity for hearing to determine the propriety of the Secretary's decision to take away benefits in the form of an entitlement to payment of medical bills after this entitlement has vested.

■ It is the opinion of the court that the Social Security Act itself requires a pretermination hearing in order to fulfill the requirement that reasonable notice and an opportunity to be heard be provided. But, contrary to the arguments of the defendant, the court also views the due process clause of the Fifth Amendment as applicable in this case to provide the plaintiffs with a pretermination hearing. It should be noted that there is a significant difference between the termination of disability benefits in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and this case. In *Eldridge*, the Court emphasized the fact that the plaintiff, like the plaintiff in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), would be required to wait months without benefits before a decision by the Secretary could be had, and "the typically modest resources of the family unit of the physically disabled worker, the hardship imposed upon the erroneously terminated disability recipient may be significant." 424 U.S. at 342, 96 S.Ct. at 906. However, the Court then pointed out that, unlike the plaintiff in *Goldberg*, Eldridge's "need is likely to be less than that of a welfare recipient" and he has "access to private resources" as well as "other forms of government assistance" when "the termination of disability benefits places a worker or his family below the subsistence level." *Id.* In this case, the plaintiffs are over sixty-five years old and have only a small monthly income. Even a combination of plaintiffs' monthly income and government assistance could put them in rather dire straits should they be required to pay some substantial and unanticipated medical bills. For this reason, plaintiffs' case is more like the case in *Goldberg* than in *Eldridge*. Thus, as in *Goldberg*, a pretermination hearing is constitutionally required and must be provided to these plaintiffs by the Secretary before the decision is made not to pay for medical services that have already been provided and certified as medically necessary.

The motion for summary judgment by the defendant is denied; the motion for summary judgment by plaintiffs is granted. The Secretary violated the Social Security Act and the due process clause of the Fifth Amendment by not affording the plaintiffs reasonable notice and hearing before denying payments of benefits for medical services. Plaintiffs motion for certification of this suit as a class action having been granted, it serves to make this ruling applicable to the class plaintiffs represent.