ALABAMA HOSPITAL ASSOCIATION, et al.

v.

The UNITED STATES.

No. 465–79C.

United States Court of Claims.

Decided June 17, 1981.

M. Roland Nachman, Jr., Montgomery, Ala., attorney of record, for plaintiffs; Steiner, Crum & Baker and John P. Oliver, II, Montgomery, Ala., of counsel.

Elizabeth Langer, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before KASHIWA, BENNETT, and SMITH, Judges.

## ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

KASHIWA, Judge:

This case is before the court on plaintiffs' motion for summary judgment and defendant's alternative cross motion for summary judgment or motion for judgment on the pleadings. There is no genuine issue as to any material fact. After hearing oral argument and fully considering the parties' submissions, we hold in defendant's favor.

This case is the most recent in a number of suits concerning Medicare. The present case was first filed as a class action in the district court but was transferred here pursuant to 28 U.S.C. § 1406(c) (1976) after the circuit court of appeals vacated the unreported district court decision for a lack of subject matter jurisdiction. *Alabama Hospital Association v. Califano*, 587 F.2d 762 (5th Cir.), *cert. denied*, 444 U.S. 826, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979). In the district court, the parties had stipulated that the action was "properly maintainable and may proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure * * *." After transfer, the plaintiffs [1] originally sought to continue the class action here pursuant to the stipulation; while the defendant contended the somewhat different considerations applicable to such actions here rendered the stipulation of little value.[2] Fortunately, upon the court's sug-

---

1. The district court characterized the plaintiffs in the class action as follows:

    "Plaintiffs are the Alabama Hospital Association, an organization comprised of approximately 140 hospitals in the State of Alabama, and the Tallapoosa County Hospital Board, Inc., which operates a hospital in Dadeville, Alabama. Plaintiff Tallapoosa County Hospital Board sues on its own behalf, and each plaintiff sues on behalf of all private non-profit, private proprietary, and non-federal governmental hos-

pitals located in Alabama with the exception of the Hospital Association of Conecuh County." The petition filed here after transfer named as plaintiffs the Alabama Hospital Association, the Tallapoosa County Hospital Board, Inc., the Chilton County Hospital Board, and the Macon County Hospital Association. The Tallapoosa County Board, the Chilton County Board, and the Macon County Association all appear to be members of the Alabama Hospital Association.

2. *See Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 453 F.2d 1272 (1972); *Crone v.*

gestion at oral argument, counsel for the plaintiffs agreed to pursue this case as a joint action under Court of Claims Rule 63(a). As defendant concurred, we proceed on that basis.[3]

Federal Health Insurance for the Aged, popularly known as Medicare, was enacted by Congress in Title I of the Social Security Amendments of 1965, Pub.L.No.89–97, §§ 101–122, 79 Stat. 286 (1965), as Subchapter XVIII of the Social Security Act. The 1965 legislation, as amended, presently is codified at 42 U.S.C. §§ 1395–1395rr (1976 and Supp. III 1979). Subsequent statutory references are to the 1970 United States Code except as noted.

Medicare consists of two basic parts. Part A (42 U.S.C. §§ 1395c–1395i–1) provides insurance for hospital and related post-hospital services. Part B (42 U.S.C. §§ 1395j–1395w) provides insurance for supplemental medical services apart from hospitalization, such as those rendered by physicians. This case arises under Part A.

Under Part A, the cost of essential hospital services for persons aged 65 and older is paid from a trust fund financed by wage taxes on employees and self-employers. The trust fund makes payments for the benefit of elderly individuals directly to the institutions offering the services. However, before an institution can receive payments, certain requirements, such as accreditation, must be met. See 42 U.S.C. §§ 1395f(a), 1395x(u), and 1395bb. Moreover, these institutions, commonly known as providers, must enter agreements with the Secretary of Health, Education and Welfare (HEW). Those agreements must meet the requirements of 42 U.S.C. §§ 1395cc(a) and 1395f(a). Payment for services is based on the reasonable cost of such services, 42 U.S.C. § 1395f(b), as determined pursuant to 42 U.S.C. § 1395x(v) and implementing regulations.

Private, non-governmental entities handle the routine administration of both Part A and Part B. These entities are termed "fiscal intermediaries" under Part A and "carriers" under Part B. Usually, these entities are health and accident insurance companies such as the Blue Cross organization. The Part A intermediaries are nominated by a provider or group of providers and themselves enter contracts with HEW. These intermediaries serve as HEW's agent for many functions, such as hospital audits, information dissemination, and fund disbursement.

In making Part A disbursements, the fiscal intermediaries must resolve two important and distinct questions: (1) whether the particular services provided to a beneficiary are covered under 42 U.S.C. § 1395d and not excluded by 42 U.S.C. § 1395y, *i. e., coverage* determinations; and (2) whether the amount paid for the services is the reasonable cost under 42 U.S.C. § 1395x(v), *i. e., reasonable cost* determinations. The two determinations are made under different procedures, which we discuss more fully below.

In 1972 the fiscal intermediary for provider hospitals in Alabama reviewed certain earlier coverage determinations favorable

---

*United States*, 210 Ct.Cl. 499, 538 F.2d 875, *modified*, 210 Ct.Cl. 748 (1976).

**3.** Thus, the joint plaintiffs in this action are the members of the Alabama Hospital Association contained in plaintiffs' Exhibit X: John A. Andrew Memorial Hospital, Baptist Medical Center Montclair, Baptist Memorial Hospital, Parkway Medical Center Hospital, Blount Memorial Hospital, Chambers County Hospital, Colbert County Hospital, Columbia General Hospital, Community Hospital, Inc., Courtland Community Hospital, Druid City Hospital, East Tallapoosa Hospital, Fayette County Hospital, Florala Memorial Hospital, Inc., Greene County Hospital, Henry County Hospital, Lister Hill Hospital, Huntsville Hospital, Lamar County General Hospital, Macon County Hospital, Mizell Memorial Hospital, Mobile General Hospital, Northeast Alabama Regional Medical Center, North Jackson Hospital, Perry County Hospital, Pineview Hospital, Randolph County Hospital, St. Jude's Catholic Hospital, Shoals Hospital, Inc., South Baldwin Hospital, Stringfellow Memorial Hospital, St. Martin de Porres, Chilton County Hospital, and Athens-Limestone Hospital. The Alabama Hospital Association cannot be a party plaintiff as it does not operate a hospital and thus has no claim for money damages against the United States. *See United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969).

to the providers. The review assessed whether the services which had been rendered were medically "reasonable and necessary" as required by 42 U.S.C. § 1395y(a)(1). The provider hospitals had previously been reimbursed by Medicare for the services. The investigations consisted of a bi-level review in which patient files were first examined by registered nurses employed by the fiscal intermediary. Those files which suggested medically unnecessary services had been performed were then reexamined by consulting physicians also employed by the intermediary. The intermediary made such coverage redetermination only after a consulting physician concurred with the preliminary finding of the registered nurse.

After the review had been completed, the hospitals were informed by letter of any overpayment resulting from adverse coverage redeterminations, the names of beneficiaries involved, the number of days of service disallowed, and the specific amount of the overpayment. The letter also requested repayment. As a result of such letters, the majority of the provider hospitals "voluntarily" repaid the amounts requested. The remaining hospitals had these overpayments recouped from later unrelated Medicare payments. The correctness of the later Medicare payments is not presently in dispute.

These Medicare providers seek money damages in the amount of monies repaid or recouped, alleging as all plaintiffs in this court must, jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (1976).[4] Plaintiffs' exact theory of jurisdiction, however, is somewhat confused. At one point, plaintiffs assert:

> This is not a case where the issue for determination is whether or not certain provider hospitals were entitled under the Medicare Act to reimbursement for hospital services. The issue is whether the

United States, through HEW, may take from these Alabama hospitals $657,000 of funds already paid to them and already in their coffers, without affording them a hearing which satisfies the constitutional requirements of due process of law.

Plaintiffs' repeated citation of *Whitecliff, Inc. v. United States*, 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977), and similar cases, which hold that Medicare cases arising prior to 1973 are within our Tucker Act jurisdiction as claims founded on the Medicare contracts and statute, *id.* at 58, 536 F.2d at 351, suggests plaintiffs nevertheless assert this basis as well. Moreover, plaintiffs' citation of *Kirkendall v. United States*, 90 Ct.Cl. 606, 31 F.Supp. 766 (1940), *United States v. State Bank*, 96 U.S. 30, 24 L.Ed. 647 (1877), and similar cases, offers the further possibility that plaintiffs are alleging contract-implied-in-fact jurisdiction.

■ This apparent confusion as to the jurisdictional basis for suit, as well as the related assertion by plaintiffs that this court should do no more than apply the vacated district court decision, causes considerable attention to be directed towards a non-issue, whether this court has jurisdiction to award money damages if the Due Process Clause of the Fifth Amendment has been violated. It is well settled, as the defendant correctly argues, that we have no jurisdiction over a claim founded solely on that provision. The Due Process Clause simply cannot be read to mandate money damages be paid, as *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976), requires. *E. g., Gordon v. United States*, Ct.Cl. 649 F.2d 837, 838 n.2; *Carruth v. United States*, 224 Ct.Cl. ——, ——, 627 F.2d 1068, 1081 (1980); *Vlahakis v. United States*, 215 Ct.Cl. 1018, 1019 (1978). It does not follow, however, that

---

4. 28 U.S.C. § 1491 (1976) provides in relevant part:

"The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regula-

tion of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

\* \* \* \* \* \*

this petition must be dismissed as beyond our Tucker Act jurisdiction. It is equally well settled that where a claim appears to be within our jurisdictional statute, as for example one founded on statute or contract, that claim is not removed from our jurisdiction merely because a plaintiff must make a constitutional argument to prevail. *Gentry v. United States*, 212 Ct.Cl. 1, 5–8, 546 F.2d 343, 345–346 (1976). Thus, in *Overlook Nursing Home, Inc. v. United States*, 214 Ct.Cl. 60, 556 F.2d 500 (1977), and *Ulman v. United States*, 214 Ct.Cl. 308, 558 F.2d 1 (1977), we passed on due process claims in the context of the Medicare statute. On this issue, the present controversy is no different from *Overlook* and *Ulman*. When this petition is reduced to its essentials, and despite plaintiffs' contrary assertions, these are at least claims founded on the Medicare contracts and statute. *See, e. g., Pasadena Hospital Association, Ltd. v. United States*, 223 Ct.Cl. ——, ——, 618 F.2d 728, 729–730 (1980); *Overlook, supra; Whitecliff, supra.* These claims are within the literal breadth of the Tucker Act.

■ Once the literal requirements of the Tucker Act are satisfied, plaintiffs contend, this court should apply the rationale of the district court on all subsequent issues in this suit. The district court concluded that this suit was not barred under the statutory scheme and further concluded that due process required a hearing on the compelled repayments. The district court then required the defendant to hold an appropriate hearing and awarded damages if the defendant failed to do so. Plaintiffs' theory appears to be that a failure of subject matter jurisdiction is a sort of minor procedural defect which prevents immediate enforcement of a decision but leaves the underlying reasoning intact.

■ It is well settled, however, that a ruling on the merits in a suit thereafter dismissed for lack of jurisdiction is not conclusive in a subsequent suit on the same claim. *E. g., Faith Hospital Association v. United States*, 218 Ct.Cl. 255, 263, 585 F.2d 474, 478 (1978) (*Faith I*); *Alabama Rural Fire Insurance Co. v. United States*, 215 Ct.Cl. 442, 452–453 n.10, 572 F.2d 727, 732 n.10 (1978). *See also International Philanthropic Hospital Foundation v. United States*, 223 Ct.Cl. ——, 621 F.2d 402 (1980). Far from being a minor procedural matter, a lack of subject matter jurisdiction goes to the very power of a court to hear a controversy; and thus, any "decision" by a court lacking subject matter jurisdiction is a nullity, *void ab initio*. Although a court which later properly entertains the controversy may regard the earlier discussion helpful, that earlier decision can be accorded no weight either as precedent or as law of the case. *Duncan v. United States*, 220 Ct.Cl. 1, 597 F.2d 1337 (1979), *vacated and remanded*, 446 U.S. 903, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), is not to the contrary. Even assuming *arguendo* that case had not been vacated, its result is easily distinguishable. In *Duncan*, plaintiffs had filed suit in district court seeking declaratory, injunctive, and monetary relief. The district court ruled on plaintiffs' claims insofar as they pertained to the declaratory and injunctive relief sought and transferred the remainder of the suit to this court. In *Duncan*, unlike the case at bar, the district court clearly had subject matter jurisdiction over the equitable claims. Therefore, collateral estoppel prevented relitigation of the issues determined in the district court. Plaintiffs, therefore, can take no comfort from *Duncan*; and the other cases plaintiffs cite are likewise distinguishable. It follows, of course, that we must determine for ourselves whether the jurisdiction provided under the Tucker Act has been limited as to Medicare Part A coverage determinations.

Defendant argues that the incorporation of 42 U.S.C. § 405(h) into the Medicare statutes via 42 U.S.C. § 1395ii[5] supplies that limitation. Section 405(h), Title 42 of the United States Code, provides:

---

5. 42 U.S.C. § 1395ii provides:

"The provisions of sections 406, 408, and 416(j) of this title, and of subsections (a), (d), (e), (f), (h), (i), (j), (k) [and] (*l*) of section 405 of this title, shall also apply with respect to this subchapter to the same extent as they are applicable with respect to subchapter II of this chapter."

(h) *Finality of Secretary's decision.*

The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter.

The defendant's argument is straightforward: 42 U.S.C. § 405(h), as interpreted in *Weinberger v. Salfi*, 422 U.S. 749, 756–763, 95 S.Ct. 2457, 2462–65, 45 L.Ed.2d 522 (1975), prohibits judicial review of Social Security Act determinations (including those under Medicare) other than as provided in the statutes.[6] As the only applicable provisions, 42 U.S.C. §§ 405(g) and 1395ff, do not entitle providers to a hearing or judicial review of adverse coverage determinations such as these, it follows, says the defendant, that this action must be dismissed.[7]

To be sure, the defendant's contention is hardly novel. We have previously rejected such an argument as to suits concerning pre-1973 reasonable cost disputes under Part A (*e. g., Whitecliff, supra*) and as to post-1973 reasonable cost disputes under Part B (*Erika, Inc. v. United States*, 225 Ct.Cl. ——, 634 F.2d 580 (1980), *cert. granted*, —— U.S. ——, 101 S.Ct. 2312, 68 L.Ed.2d 838 (1981)), to the extent that providers in those circumstances allege a violation of constitutional, statutory, or regulatory provisions. We have not, however, had occasion to pass on this issue as it relates to *coverage* determinations under Part A for pre-1973 periods.

*Whitecliff, supra*, has been the touchstone on the relationship between 42 U.S.C. § 405(h) (as explained in *Salfi*) and the Medicare provisions. In *Whitecliff*, we wrote:

We decline the invitation to extend *Salfi's* reading of Section 405(h) to this Medicare case. The social security provisions with which the Supreme Court dealt in *Salfi* authorize appeals of all decisions made after hearings, without limitation as to issues; the practical effect of the *Salfi* decision was simply the enforcement of the Section 405(g) procedures and prerequisites to judicial review. *See also Mathews v. Eldridge*, 424 U.S. 319, 326–32 [96 S.Ct. 893, 898–901, 47 L.Ed.2d 18] (1976). By contrast, the Medicare statute's express review provisions in effect prior to 1973 apply to extremely limited categories of cases involving providers. To import into the Medicare program the *Salfi* preclusion of judicial review (except as expressly authorized) *would be to prevent all review of very large categories of cases and issues, including constitutional questions, and to accord absolute finality to adjudications by private organizations like the BCA.* Such a result would be of doubtful constitutional validity and would undermine the normal presumption in favor of judicial review.[7] *We cannot assume that the Supreme Court would extend the Salfi interpretation of Section 405(h) to Medicare cases, where the consequences would be so dramatically different, and therefore we adhere to the pre-Salfi view of judicial review of Medicare provider disputes: Where the Medicare statute provides for review, providers and courts must follow the specified procedures and limitations; in other*

---

**6.** It has been settled since *Goldstein v. United States*, 201 Ct.Cl. 888, 889, *cert. denied*, 414 U.S. 974, 94 S.Ct. 287, 38 L.Ed.2d 217 (1973), and *Burton v. United States*, 205 Ct.Cl. 846, 846 (1974), that 42 U.S.C. § 405(h) has applications to actions in this court despite a dearth of literal language to that effect.

**7.** For simplicity's sake, we refer collectively to the methods of review specified in 42 U.S.C. §§ 405(g), 405(h), 1395ff(b), and 1395ff(c) as

the legislative scheme. That scheme was amended in 1972 by sections 243 and 299O of the Social Security Amendments Act of 1972, Pub.L.No.92–603, 86 Stat. 1329, and by section 3 of the Act of October 26, 1974, Pub.L.No.93–484, 88 Stat. 1459. As these amendments apply only to cost periods after June 30, 1973, the parties agree these amendments are inapplicable to the present suit.

*cases, a provider may obtain judicial review, under the general jurisdictional provisions which are applicable, at least so far as to ensure compliance with statutory and constitutional provisions.* In this court, 28 U.S.C. § 1491 (the Tucker Act) is the pertinent jurisdictional provision both because of plaintiff's contract with the Government and also because the Medicare legislation, fairly read, mandates appropriate payment to providers. *Cf. United States v. Testan,* 424 U.S. 392 [96 S.Ct. 948, 47 L.Ed.2d 114] (1976). [Emphasis supplied; other footnotes omitted.]

---

"7 *See generally Johnson v. Robison,* 415 U.S. 361, 366–68, 373–74, 94 S.Ct. 1160, 1165–66, 1168–69, 39 L.Ed.2d 389 (1974); *Barlow v. Collins,* 397 U.S. 159, 166–67, 90 S.Ct. 832, 837–38, 25 L.Ed.2d 192 (1970); *Kingsbrook Jewish Medical Center v. Richardson,* 486 F.2d 663, 667–68 (2d Cir. 1973); Homer & Platten, *Medicare Provider Reimbursement Disputes: An Analysis of the Administrative Hearing Procedures,* 63 Geo.L.J. 107, 126–29 (1974). In *Salfi* the Supreme Court distinguished *Johnson v. Robison, supra,* a case in which the Court held that a statute similar to 42 U.S.C. § 405(h) did not preclude review of the question raised, in part on the ground that review of a constitutional challenge to the statute would have been cut off if the interpretation contended for by the Government in *Johnson* had prevailed, while no constitutional challenges would be denied review under the Social Security Act. *See* 422 U.S. at 762, 95 S.Ct. at 2465." 210 Ct.Cl. at 57–58, 536 F.2d at 350–351.

Thus, *Whitecliff* stands squarely for the proposition that *Salfi* is inapplicable to Medicare situations where "all review" is prevented and where "absolute finality" would therefore be accorded to adjudications by the intermediaries. The rule formulated by the *Whitecliff* court (and the rule which we are bound to apply, *see Dravo Corp. v. United States,* 219 Ct.Cl. 416, 419, 594 F.2d 842, 843 (1979)), is that:

* * * Where the Medicare statute provides for review, providers and courts must follow the specified procedures and limitations; in other cases, a provider may obtain judicial review, under the general jurisdictional provisions which are applicable. * * * [210 Ct.Cl. at 58, 536 F.2d at 351.]

*Whitecliff,* of course, concluded that no review was provided in the statute of Part A reasonable cost determinations for pre-1973 periods and that jurisdiction in limited circumstances here under the Tucker Act was proper. Similarly, in *Erika, supra,* we concluded that a Part B provider may, if constitutional, statutory, or regulatory violations were alleged, sue in this court as to adverse reasonable cost determinations for post-1973 periods, notwithstanding that such an action was not specified in the relevant version of 42 U.S.C. § 1395ff and would have otherwise been barred by the language of 42 U.S.C. § 405(h). The contrary result, as in *Whitecliff,* would have prevented all review of a very large category of determinations. *Erika, supra* at ——, 634 F.2d at 586–587. *See generally Overlook Hospital, supra; Appalachian Regional Hospitals, Inc. v. United States,* 217 Ct.Cl. 1, 576 F.2d 858 (1978).

Reduced to essentials, then, the present case requires us to ascertain whether the pre-1973 statute "provides for review" of adverse coverage determinations. If so, under *Whitecliff* we must conclude that we are precluded from hearing this controversy.

Under the Medicare statutes, coverage determinations are governed by 42 U.S.C. §§ 1395d and 1395y. Section 1395d specifies the benefits covered by Medicare Part A: in-patient hospital services, post-hospital extended care services, and post-hospital home health services, and further provides annual day or visit limits for each. Section 1395y is applicable to both Parts A and B of Medicare and by its terms excludes certain services from the broad allowances of 42 U.S.C. § 1395d. The most important exclusions from coverage are expenses "which are not reasonable and necessary for the diagnosis or treatment of illness or injury * * *," 42 U.S.C. § 1395y(a)(1), or which are for "custodial care," 42 U.S.C. § 1395y(a)(9).

Reasonable cost determinations, as involved in *Whitecliff* and *Erika,* on the other hand, are governed by the relevant version of 42 U.S.C. § 1395x(v) and the regulations thereunder. In determining reasonable cost

of services under Part A, HEW makes allocations based on the proportion of charges made with respect to Medicare beneficiaries to all charges for that provider's services. See 20 C.F.R. §§ 405.452 (1972). HEW also makes reasonable cost determinations based on the various types of services provided Medicare beneficiaries and the various classes of institutions or agencies which are providers, 42 U.S.C. § 1395x(v).

This careful distinction between coverage determinations and reasonable cost determinations continues in the provision detailing determinations and appeals, 42 U.S.C. § 1395ff. Subsection (c) of that section provides:

> (c) Any institution or agency dissatisfied with any determination by the Secretary that it is not a provider of services, or with any determination described in section 1395cc(b)(2) of this title, shall be entitled to a hearing thereon by the Secretary (after reasonable notice and opportunity for hearing) to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

Thus, a *provider* is granted a hearing and judicial review only in limited situations under Part A: (1) when provider status is contested, or (2) when the Secretary seeks to terminate the provider agreement, as for noncompliance. Under 42 U.S.C. § 1395ff(b), a beneficiary is entitled to a hearing and review in far broader circumstances:

> (b) Any individual dissatisfied with any determination under subsection (a) of this section as to entitlement under part A or part B, or as to amount of benefits under part A where the matter in controversy is $100 or more, shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title, and, in the case of a determination as to entitlement or as to amount of benefits where the amount in

controversy is $1,000 or more, to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

A beneficiary, therefore, may contest Part A and Part B adverse coverage ("entitlement") determinations and ultimately receive judicial review on such determinations, without limitations on amount under pre-1973 law.[8] As to Part A reasonable cost ("amount of benefits") determinations, a hearing would only be available when the amount in controversy exceeds $100 and judicial review available only when the amount exceeds $1,000. No hearing or judicial review is available under the pre- or post-1973 statutory scheme to a beneficiary contesting a Part B reasonable cost determination.

Also of relevance is 42 U.S.C. § 1395cc(a)(1)(A). All providers must file an agreement (the so-called Medicare contract) with the Secretary of HEW to participate in the Medicare Part A program. 42 U.S.C. §§ 1395f(a) and 1395cc(a). Under 42 U.S.C. § 1395cc(a)(1)(A), a provider must agree

> not to charge, except as provided in paragraph (2), any individual or any other person for items or services for which such individual is entitled to have payment made under this subchapter (or for which he would be so entitled if such provider of services had complied with the procedural and other requirements under or pursuant to this subchapter or for which such provider is paid pursuant to the provisions of section 1395f(e) of this title).

A provider is thereby prohibited from charging a beneficiary for the unreasonable portion of covered services but is *not prohibited* from charging a beneficiary for services which are not covered by Medicare. *See Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329, 339–340 n. 18 (5th Cir. 1975), *on request for rehearing,*

---

8. *See, e. g., Bohlen v. Weinberger*, 483 F.2d 918, 921, 922 nn.14–16 (3d Cir. 1973); *Ridgely v. Sec'y of Health, Education and Welfare*, 475 F.2d 1222, 1223, 1224 (4th Cir. 1973); *Himmler v. Weinberger*, 422 F.Supp. 196, 200–201 (E.D. Mich.1976); *Cardno v. Finch*, 311 F.Supp. 251 *passim* (E.D.La.1970).

522 F.2d 179, 180, *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976). Similarly, under the post-1973 provisions applicable to Part B, a provider can receive payments under Medicare only when the 42 U.S.C. § 1395cc(a) agreement (including a 42 U.S.C. § 1395cc(a)(1)(A) provision) has been filed. See 42 U.S.C. § 1395n(a) (Supp. III 1973) and present version.

Thus, when this portion of the Medicare statute is reduced to essentials, it becomes apparent that adverse reasonable cost determinations under either Part A or Part B cannot be passed along to the beneficiary once the Government obtains repayment from the provider. As the provider has no right under the statute to bring an action contesting the adverse reasonable cost determinations, it follows that the loss from both Part A and B reasonable cost determinations is left completely on the provider without an opportunity for judicial review. Beneficiaries, although possessing the technical right to have judicial review of Part A amount determinations if in excess of $1,000, would have little if any reason to do so when they do not bear the economic loss associated with the decision. Without an opportunity for review, the loss falls with finality. Faced with that finality, *Whitecliff, Erika,* and similar cases concluded that 42 U.S.C. § 405(h) should not apply to reasonable cost determinations with the same breadth as the *Salfi* Court had applied it to other Social Security Act determinations. Thus, limited review was allowed.

■ As to pre–1973 adverse Part A coverage determinations, however, the statutes we have detailed above have a far different impact. Although the provider is also denied the right to contest the initial adverse coverage decision, the pre–1973 statutes do not require that the economic loss caused by an adverse coverage determination remain with the provider. The provider may, under the statute, recover any loss associated with adverse coverage determinations from the beneficiary as the provider makes no agreement under 42 U.S.C. § 1395cc(a)(1)(A) to not pursue collection from the patient. Faced with the loss from the transaction, of course, the beneficiary has a significant economic incentive to contest the adverse determination before the Secretary and, if necessary, to seek judicial review under 42 U.S.C. §§ 1395ff(b) and 405(g). It is the beneficiary, not the provider, who under the statute is to bear the final loss caused by adverse coverage determinations; and the statute affords that loss-bearing beneficiary a right to review. We cannot say that Congress has not provided for review of adverse coverage determinations such as the ones of which these providers complain. Plainly, Congress intended that pre–1973 coverage disputes would be resolved in a manner different from that applicable to reasonable cost disputes and provided the means, a pass through of the loss associated with an adverse coverage determination to those with the statutory right to seek hearings and, if necessary, bring suit. In such circumstances, of course, where Congress has provided a method for review, *Whitecliff* and its progeny require that we respect that choice.

The plaintiffs suggest that this court "must" have jurisdiction over this case in that "[t]he Fifth Circuit transferred this case here precisely because it held that this Court does have jurisdiction. *Alabama Hospital Assn. v. Califano,* 587 F.2d 762 (5th Cir. 1979)." This contention, of course, must be rejected for it is axiomatic that we may evaluate our jurisdiction at any time, notwithstanding what other courts, in dicta or otherwise, may have suggested. *See Aetna Casualty & Surety Co. v. United States,* Ct.Cl., 655 F.2d 1047, 1051 (1981); *Berdick v. United States,* 222 Ct.Cl. ——, ——, 612 F.2d 533, 536 (1979), and cases cited thereat.

Plaintiffs' briefs focus considerable attention on the allegedly unconstitutional nature of recoupment without a due process hearing. As we conclude we are without jurisdiction under the statutory scheme to hear any of plaintiffs' claims, those constitutional challenges are beyond our jurisdiction. Thus, although plaintiffs have not done so expressly, their briefs suggest an-

other argument, viz., that the legislative scheme of 42 U.S.C. §§ 405(h), 405(g), 1395ff(b), and 1395ff(c), insofar as it precludes constitutional challenges to coverage determinations, is unconstitutional. See *Johnson v. Robison*, 415 U.S. 361, 366–367, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389 (1974).

We find this argument unpersuasive. Clearly, the legislative scheme those statutes provide does not preclude *all* constitutional challenges for those provisions do not limit the type of challenge a beneficiary may bring. An argument that 42 U.S.C. § 405(h) and related provisions is unconstitutional, then, must lie on an assumption that the Medicare provisions, by allowing payment directly to these providers, confer on those providers an interest which the providers alone can protect. The statute, however, is quite clear, both expressly in 42 U.S.C. § 1395gg(a) and implicitly in the provisions discussed above, that payment to a provider is to be regarded "as a payment to such individual [the beneficiary]" and is made as such. Moneys paid under the Medicare scheme to these providers are only paid conditionally, subject to administrative redetermination, including recoupment. *See generally Mount Sinai Hospital, supra.* Payment directly to the provider (rather than to the beneficiary and then to the provider) is apparently little more than an administrative convenience. We recognize, of course, these plaintiffs are far happier to collect as an initial matter from the United States, rather than from individual beneficiaries after repayment is compelled. *Id.* at 335. We think that, however, is an inade-

quate basis on which to conclude the legislative scheme, as interpreted, is unconstitutional.[9] Had the statute required that Part A payment be made to the *beneficiaries*, these plaintiffs could not seriously assert that the Constitution accords them as *providers* a right to judicial review of a decision denying Medicare coverage to a beneficiary, even though such a determination might make ultimate collection by the providers more difficult. *Cf. O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980) (third parties indirectly affected by Government regulation have no due process right to contest the action). It would be incongruous for us to conclude the Constitution accords the providers a right to judicial review of Part A adverse coverage determinations merely because payment is first made for convenience to the providers. The statute clearly allows constitutional challenges by those for whose benefit the payment is made, and we think that adequate.[10]

In *Salfi*, the Supreme Court concluded that 42 U.S.C. § 405(h) was not constitutionally invalid as applied to the Social Security Act, even though that provision precluded constitutional challenges other than those brought under 42 U.S.C. § 405(g). We find the following remarks of particular relevance and adopt them as our own:

> There is another reason why *Johnson v. Robison* is inapposite. It was expressly based, at least in part, on the fact that if § 211(a) reached constitutional challenges to statutory limitations, then absolutely

**9.** Nor does *Langhorne Gardens, Inc. v. Weinberger*, 371 F.Supp. 1216 (E.D.Pa.1974), convince us otherwise. *Langhorne Gardens* determined that adverse Part B coverage determinations threaten a "substantial" interest of the provider, and thus an administrative hearing must at some point be afforded. The Government distinguishes that decision in that "the difference in cost and coverage procedures in Part A * * * are [sic] not present in Part B. *See [Szekely v. Florida Medical Association*, 517 F.2d 345, 347–348 (5th Cir. 1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976)]. * * *" The *Langhorne Gardens* decision did not, and could not, reach the issue before us, whether the legislative preclusion of judicial review is constitutionally permissible.

After careful consideration, we decline to adopt the broad reading of *Langhorne Gardens* and *Mount Sinai Hospital* which plaintiffs urge.

**10.** Concededly, the import of today's decision and that of the Fifth Circuit decision earlier in this litigation is that the providers are unable, in their own stead, to challenge either the adverse coverage determinations or the constitutionality of the recoupment procedures. That result, as the text discusses, is itself constitutional and is mandated by the Medicare statutes as they read during the relevant periods. If there is inequity or unfairness in this result, it is for the Congress, and not this court, to remedy.

no judicial consideration of the issue would be available. Not only would such a restriction have been extraordinary, such that "clear and convincing" evidence would be required before we would ascribe such intent to Congress, 415 U.S., at 373, [94 S.Ct. at 1168] but it would have raised a serious constitutional question of the validity of the statute as so construed. *Id.*, at 366–367 [94 S.Ct. at 1165]. In the present case, as will be discussed below, the Social Security Act itself provides jurisdiction for constitutional challenges to its provisions. Thus the plain words of the third sentence of § 405(h) do not preclude constitutional challenges. They simply require that they be brought under jurisdictional grants contained in the Act, and thus in conformity with the same standards which are applicable to nonconstitutional claims arising under the Act. The result is not only of unquestionable constitutionality, but it is also manifestly reasonable, since it assures the Secretary the opportunity prior to constitutional litigation to ascertain, for example, that the particular claims involved are neither invalid for other reasons nor allowable under other provisions of the Social Security Act. [422 U.S. at 762, 95 S.Ct. at 2465]

*See also O'Bannon v. Town Court Nursing Center,* 447 U.S. at 797–798, 100 S.Ct. at 2481–2482 (concurrence of Blackmun, J.); *Whitecliff,* 210 Ct.Cl. at 58 n.7, 536 F.2d at 350–351 n.7.

■ These Medicare claims are, at a minimum, founded on statute and contract and thus literally within the Tucker Act. We conclude, however, that the statute does provide a method of review for Part A coverage disputes, viz., suit by the *beneficiary.* Under our prior decisional law, this action, brought by the *providers,* must therefore be dismissed. We further conclude that the legislative scheme of 42 U.S.C. §§ 405(h), 405(g), 1395ff(b), and 1395ff(c) is constitutional for an avenue of constitutional challenge is available to those possessing the true economic interest granted by the statute, the beneficiaries. Although not specifically addressed in this opinion, we have considered each of plaintiffs' contentions and reject them.

## CONCLUSION

Based on the foregoing, plaintiffs' motion for summary judgment must be and is hereby denied. Defendant's alternative cross motion for summary judgment must be and is hereby allowed. Defendant's motion for judgment on the pleadings is denied as moot. The petition is dismissed.