Donald L. **SCHULTZ** and Beverly J. Schultz, Husband and Wife, and Don Schultz Farms, Inc., a Washington Corporation

v.

The **UNITED STATES.**

No. 90–177C.

United States Claims Court.

Feb. 27, 1992.

Jeffrey J. Bernstein, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Courtney Blair, U.S. Dept. of Agriculture, of counsel.

## OPINION

YOCK, Judge.

This contract action is before the Court on the parties' cross-motions for summary judgment. The plaintiffs have brought suit challenging the determination of the Secretary of Agriculture, through his des-ignated representative the Deputy Administrator, State and County Operations (DASCO), that the plaintiffs collectively qualified as only one "person" for payment limitation purposes under the price support and production adjustment programs administered by the United States Department of Agriculture (USDA) during the 1986 crop year. For the reasons stated herein, after careful consideration of the administrative record, and after oral argument, the plaintiffs' summary judgment motion is denied, the defendant's cross-motion for summary judgment is granted, and the plaintiffs' complaint will be dismissed.

### Factual Background

The Commodity Credit Corporation (CCC), through the Agricultural Stabilization and Conservation Service (ASCS) of the USDA, administers price support and production adjustment programs. These programs are authorized by the Agricultural Act of 1949, as amended, 7 U.S.C. § 1421 *et seq.* (1988). The purpose of these programs is to reduce the total national acreage devoted to the production of certain crops by paying crop producers to grow less of these crops than they otherwise would have, in exchange for, *inter alia,* diversion and deficiency payments.

At the ASCS, there are three levels of authority: county, state, and federal. At the county and state levels, the programs are administered by county and state ASCS committees through county and state executive directors. The county ASCS office makes the initial payment limitation decisions, disburses the payments, and makes random checks on compliance with program requirements. The county ASCS committee serves as the first level of review for ASCS program decisions. The state committees, *inter alia,* hear appeals from county committee decisions. At the federal level, the DASCO functions as the final level of internal administrative review and supervises the state and county ASCS offices.

Farmers who are interested in entering the program must submit an application, ASCS Form No. 477, to the county ASCS

office. This form is an offer to enter into a contract with the CCC; the farmer offers to reduce his production of program crops in exchange for Government payments. In the event the Government should accept the offer, the applicant must sign a contract to participate in the program. Failure to comply with the terms of the contract, or the regulations applicable thereto, may result in the withholding of program benefits. The farmer must also submit a farm operating plan, ASCS Form No. 561, for purposes of payment limitation review.

ASCS program payments are governed, *inter alia,* by the number of "persons" recognized by ASCS. 7 C.F.R. Part 795 (1986).[1] The importance of such a determination lies in the general congressional limitation that each "person" shall receive a maximum of one $50,000 payment. Section 1001(1) of the Food Security Act of 1985, Pub.L. No. 99–198, 99 Stat. 1444 (codified at 7 U.S.C. § 1308 (1988)). Section 1001(5)(A)(i) of that Act provides that the Secretary of Agriculture (Secretary) shall issue regulations which define the term "person."

In accordance therewith, a "person" for payment limitation purposes has been defined at 7 C.F.R. § 795.3. That regulation stated:

Definition of the term "person".

Subject to the provisions of this part, the term "person" shall mean an individual, joint stock company, corporation, association, trust, estate, or other legal entity. In order to be considered a *separate* person for the purpose of the payment limitation, in addition to the other conditions of this part, the individual or other legal entity must:

(a) Have a separate and distinct interest in the land or the crop involved,

(b) Exercise separate responsibility for such interest, and

(c) Be responsible for the cost of farming related to such interest from a fund or account separate from that of any other individual or entity. [Emphasis added.]

The Secretary has also promulgated 7 C.F.R. § 795.14. That regulation stated:

Changes in farming operations.

(a) Subject to the provisions of this part, a person may exercise his or her right heretofore existing under law, to divide, sell, transfer, rent, or lease his or her property if such division, sale, transfer, rental arrangement, or lease is legally binding as between the parties thereto. However, any document representing a division, sale, transfer, rental arrangement, or lease which is fictitious or not legally binding as between the parties thereto shall be considered to be for the purpose of evading the payment limitation and shall be disregarded for the purpose of applying the payment limitation. Any change in farming operations that would otherwise serve to *increase* the number of persons for application of the payment limitation must be *bona fide* and *substantive.*

(b) A substantive change includes, for example, a substantial increase or decrease in the size of the farm by purchase, sale, or lease; a substantial increase or decrease in the size of allotment by purchase, sale, or lease; a change from a cash lease to a share lease or vice versa; and the dissolution of an entity such as a corporation or partnership. [Emphasis added.]

Compliance with ASCS regulations is a prerequisite to price support and production adjustment payments. 7 C.F.R. § 713.-103(b).

In making payment limitation determinations, additional guidance is provided ASCS personnel through internal agency handbooks. One of these ASCS handbooks, 5–PA, at ¶ 399(D), amended September 4, 1985, stated:

Changes [in farming operations] that are not substantive include "paper" changes in which the *same individuals* or other entities continue to farm the *same land,* with the *same equipment.* The land is usually leased from an entity for which the rules would require more restrictive

---

**1.** Unless otherwise noted, all future citations to   the C.F.R. are to the 1986 edition.

application of the limitation. [Emphasis added.]

Example 3 to that paragraph stated:

a *Situation.* A corporation owns a considerable amount of equipment but does not own any land. In earlier years, the corporation carried out substantial farming operations on land rented from a third party. Individuals who own more than 50 percent of the corporation stock propose to form a partnership and farm the same land previously farmed by the corporation. The partnership will negotiate the rental agreement with the owners of the land. The corporation will cease all farming operations but will continue to own and maintain the equipment. The partnership will lease the equipment from the corporation for a rental rate comparable to similar rental rates in the area. The partnership will provide its own management, labor, and capital.

b *Determination.* This is a bona fide partnership. Even though the partnership will farm the same land with the same equipment, the corporation has no interest in the land. The land is leased by the partnership directly from the third party owners. The corporation has discontinued its farming operations and will no longer qualify as a person for payment limitation purposes.

On May 7, 1986, internal agency handbook 5–PA was replaced by ASCS internal agency handbook 5–CM. Paragraphs 81 to 83, inclusive, of handbook 5–CM addresses the issue of changes in farming operations. Specifically, paragraph 81(C)(4), amended August 22, 1986, states that a substantive change includes "[o]wnership of equipment changing from the existing individual or entity to the new individual or entity by gift or sale, with no arrangement to owe the original ownership for the equipment." ASCS handbook 5–CM was not published in the Federal Register, and neither was the prior 5–PA handbook. The information contained in these handbooks, although "internal," was readily available to the farmers through the (county) ASCS offices.

The plaintiffs in this dispute are Donald and Beverly Schultz, husband and wife, and Don Schultz Farms, Inc. (the corporation), a Washington State corporation. Both the individuals and the corporation farmed land in Lincoln County, Washington. Prior to the 1986 crop year, Donald and Beverly Schultz owned 100 percent of the stock of Don Schultz Farms, Inc., which farmed two geographically different farms; one farm, known as the Davenport farm, was owned by the corporation, and the other farm, known as the Landt farm, was leased by the corporation. Because of the majority stockholder rule, 7 C.F.R. § 795.8, Donald and Beverly Schultz and Don Schultz Farms, Inc. were combined as one "person" for the 1985 crop year.

Early in 1986, Donald and Beverly Schultz transferred 50 percent of their interest in the corporation to their daughters, Amy Jo Schultz and Molly Jean Schultz, with each daughter receiving a 25 percent interest. Both daughters were full-time college students. After this transfer, Donald and Beverly Schultz, as individuals, leased and farmed the Landt farm, while the corporation continued to farm the Davenport farm. The equipment used by Donald and Beverly Schultz, in their individual farming operation, was leased from the corporation. In view of the transfer of a 50 percent interest in the corporation to their two daughters, the Schultzes requested that the ASCS allow a change in "person" status from a one person to a four person status.

The Lincoln County ASCS office initially determined that the plaintiffs were four "persons" for 1986 crop year payment limitation purposes. On July 15, 1986, the county ASCS office reversed that decision, however, and combined Don Schultz Farms, Inc., and Donald and Beverly Schultz into one "person" for the 1986 crop year. The plaintiffs were thus limited to a maximum payment of $50,000, and not the potential $88,785.78 they claimed, in program payments. The county's "person" decision in this case was based upon a factual finding that there was "no substan-

tive change in the operation, it is the same individuals farming the same land with the same equipment as last year (1985 crop year)." Appendix to Defendant's Response to Plaintiffs' Motion for Summary Judgment and Cross–Motion for Summary Judgment (App.) at 69.

The county ASCS decision was appealed to the Washington State ASC Committee. On October 14, 1986, the state committee reached the same conclusion, for the same reasons, as the county committee did. The Washington state committee decision was then appealed to the final level of administrative review, the DASCO. On September 23, 1987, the DASCO determined "that a substantive change in farming operations did not occur." App. at 9. The DASCO consequently concluded that Don Schultz Farms, Inc. and Donald and Beverly Schultz should be combined as one "person" for payment limitation purposes. Upon motion for reconsideration, the decision was reaffirmed by the DASCO on October 13, 1989. Donald and Beverly Schultz and Don Schultz Farms, Inc., filed suit in this Court on February 22, 1990, challenging DASCO's decision.

*Discussion*

The plaintiffs in this action have filed a motion for summary judgment seeking money damages for a breach of contract based on the following alternative theories: (1) arbitrary and capricious action by the DASCO, or (2) denial of the plaintiffs' notice rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution and the Administrative Procedure Act (APA). The defendant has filed a cross-motion for summary judgment arguing: (1) the DASCO's determinations should be upheld as rationally based on the administrative record, and (2) the plaintiffs' due process and APA claims may not properly be brought before this Court.

Where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, the granting of summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The Court agrees with the parties that no genuine issue of disputed facts exist. Thus, the Court may proceed to decide this case on the parties' motions. It is clear from the administrative record, based upon this standard, that judgment should be granted for the Government.

**A. Standard of Review**

■ To the extent that the plaintiffs are making a claim for money damages under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1988), the United States Claims Court has jurisdiction to review ASCS determinations concerning price support and production adjustment programs. *Willson v. United States,* 14 Cl.Ct. 300, 304 (1988); *Raines v. United States,* 12 Cl.Ct. 530, 534 (1987). Section 1429, of title 7 of the United States Code, provides in pertinent part that determinations made by the Secretary of Agriculture under the Agricultural Act of 1949 "shall be final and conclusive * * *." *De novo* judicial review is therefore impermissible. *Durant v. United States,* 16 Cl.Ct. 447, 452 (1988). Further, review of the factual findings made by the ASCS is precluded by 7 U.S.C. § 1385 (1988). *Willson,* 14 Cl.Ct. at 304. Review of the legal determinations made by the ASCS, however, including whether a decision is arbitrary and capricious, are subject to review. Such review by this Court, of the ASCS' legal determinations under 7 U.S.C. § 1429 "is concededly 'very limited,' but not nonexist[ant]: we need not consider the wisdom of the decisions, but must scrutinize whether the officials acted rationally and within their statutory authority." *Raines,* 12 Cl. Ct. at 536. Therefore, "[t]his court's function is to review the facts as determined by ASCS and to ascertain whether a rational basis in the administrative record underlies the decision reached." *Knaub v. United States,* 22 Cl.Ct. 268, 275 (1991).

**B. Substantive Change**

■ The DASCO determined that no substantive change occurred between the plaintiffs' 1985 and 1986 farming operations. This was based upon the conclusion that the same people were farming the same land with the same equipment. It

does not appear to be disputed, by either party, that for both the 1985 and 1986 crop years the same land was being farmed. Plaintiffs' Motion for Summary Judgment at 3–4. But to the extent that this may be in issue, it is clear from the administrative record that the same land was being farmed in both crop years. App. at 48, 74, and 76–86. In 1985, the corporation farmed both the Davenport and Landt farms. In 1986, the corporation farmed the Davenport farm, while Donald and Beverly Schultz worked the Landt farm. Therefore, although technically different entities were engaged in farming operations in 1985 and 1986, the same acreage was being tilled in 1986 as was tilled in 1985.

It appears, rather, that the dispute in this case centers around the "same people" and the "same equipment" determinations. The plaintiffs maintain that "different persons" were farming the Davenport and Landt farms in crop years 1985 and 1986, and that it was arbitrary and capricious for the DASCO to conclude otherwise. The plaintiffs further allege that it was arbitrary and capricious for the DASCO to conclude that the "same equipment" was used in both crop years, based upon the equipment leasing arrangement between the plaintiffs, when the plaintiffs had no notice, they argue, that the equipment leasing agreement they entered into would be grounds for finding a nonsubstantive change. The plaintiffs allege that because they were given no notice, through examples and internal handbook discussion, they believe that their Due Process rights under the Fifth Amendment to the U.S. Constitution were violated and that the APA's notice requirements were also violated.

This Court concludes, however, that the DASCO's finding of no substantive change, based upon the "same land," "same people," and "same equipment" determination, was rationally based. The Court also concludes that the plaintiffs have had sufficient notice that the "same person" determination had to be based on more than a "paper" change and that the equipment leasing arrangement they entered into would be grounds for finding a nonsub-

stantive change in their farming operations.

1. *The DASCO's "same person" determination.*

Prior to 1986, Donald and Beverly Schultz owned 100 percent of the stock of Don Schultz Farms, Inc. During 1986, Donald and Beverly Schultz "gifted" 50 percent of their stock in the corporation to their two daughters, with each daughter receiving 25 percent of the stock in the corporation. Thus, in 1985, Donald Schultz, Beverly Schultz, and Don Schultz Farms, Inc., operated the Davenport and Landt farms, while in 1986 these farms were allegedly operated by Donald Schultz, Beverly Schultz, Don Schultz Farms, Inc., Amy Jo Schultz, and Molly Jean Schultz. Based upon this alteration, the plaintiffs conclude that different persons were operating the same land. The DASCO rejected this argument, and the Court finds that decision was rational.

A change is *substantive* when a meaningful break from the past has occurred. No such change took place here. The only changes that took place between the 1985 and 1986 crop years were "paper" ones. Although there is no dispute that this transaction was bona fide in the sense that each daughter received a 25 percent gift of corporate stock, the DASCO found nothing "substantive" about parents giving stock to their two daughters, daughters who were in college during 1985 and 1986 and who took no part in the operation of either farm other than in name.

Examples of substantive changes in farming operations, found at 7 C.F.R. § 795.14(b), quoted above, include: a substantial increase or decrease in farm size or allotment by purchase, sale, or lease; a change from a share lease to a crop lease, or vice versa; and a dissolution of an entity, such as a partnership or a corporation. Although no change identical to any of these examples took place, between the plaintiffs' 1985 and 1986 crop years, these examples were sufficient notice to the plaintiffs of the nature, character, and

scope of those types of substantive changes the regulation required.

The plaintiffs place great importance on the fact that the stockholders of Don Schultz Farms, Inc., were different in 1986 than they had been in 1985. A corporation, however, is an entity separate from its stockholders. Were it otherwise, every time a corporation bought or sold its own stock, a new entity would be formed. A corporation, however, functions independently of who its stockholders may be, and such is the case here. In 1985, any observer of the Davenport and Landt farms would conclude that two individuals, Donald and Beverly Schultz, and one corporation, Don Schultz Farms, Inc., were the parties in control of the farming operations at those two farms. In 1986, that same observer would conclude that those same two people and one corporation were again running the same two farms. The DASCO reached this conclusion, and upon review of the administrative record, this Court concludes that it was eminently rational for the DASCO to conclude as it did.

2. *The DASCO's "same equipment" determination.*

The plaintiffs also allege that their notice rights, under the Due Process Clause of the Fifth Amendment to the U.S. Constitution and the APA, have been violated in regard to the "same equipment" determination. For the 1986 crop year, payment limitation determinations were based upon the program participant's farming condition on April 1, 1986. As of that date, internal ASCS policy was embodied in handbook 5–PA. The plaintiffs contend, however, that the DASCO's payment limitation decision was based in part not upon 5–PA but upon paragraph 81(C)(4) of ASCS handbook 5–CM. ASCS handbook 5–CM was promulgated on May 7, 1986, and later amended on August 22, 1986, after the Schultzes had already applied for the 1986 crop year determination. Consequently, program participants for the 1986 crop year were unaware of the provisions of ASCS handbook 5–CM, and how it might affect them, as of the April 1 deadline,

since 5–CM was published more than one month after that deadline.

Paragraph 81(C)(4) of ASCS handbook 5–CM discusses what amounts to a change in equipment such that it would qualify as a substantive change. The section reads as follows:

Ownership of equipment changing from the existing individual or entity to the new individual or entity by gift or sale, with no arrangement to owe the original ownership for the equipment.

The plaintiffs allege that the ASCS handbook 5–CM substantive change provisions regarding changes in farming operations, represented a significant deviation from those prior ASCS provisions dealing with substantive change, which were in effect as of the April 1 deadline; specifically, those provisions found in ASCS handbook 5–PA ¶ 399(D) and Example No. 3 thereto (quoted above). Since ASCS handbook 5–CM was not published in the Federal Register, the plaintiffs allege that they had no notice of the new 5–CM substantive change provisions which would be applied to them. The effect of this has purportedly been a violation of the plaintiffs' notice rights under the APA and a denial of their due process rights.

The DASCO found no substantive change between the plaintiffs' 1985 and 1986 farming operations based in part upon the equipment lease agreement that existed between Donald and Beverly Schultz and Don Schultz Farms, Inc. ASCS handbook 5–CM ¶ 81(C)(4) classified the type of equipment arrangement the plaintiffs engaged in as a nonsubstantive change. Had they known, the plaintiffs argue, that such an arrangement would be found nonsubstantive, they would have arranged their affairs differently. It is the alleged application of this newer handbook provision, 5–CM ¶ 81(C)(4); to the plaintiffs that forms the heart of their due process and APA notice claims. The plaintiffs admit knowledge and allege compliance with ASCS handbook 5–PA, specifically paragraph 399(D) and Example No. 3 thereto. This provision was in existence as of the April 1 deadline for the 1986 payment limitation

determinations and it is against this provision, the plaintiffs charge, that their conduct should be judged as to whether they were in compliance with ASCS requirements. Any application of a newer ASCS handbook, which allegedly sets forth substantial changes from pre-existing practice, would be a violation of the plaintiffs' notice rights.

The Government responds to these charges by simply asserting that this Court lacks jurisdiction to consider the plaintiffs' notice claim under either the due process clause or the APA. In the alternative, the Government asserts that the APA has not been violated because of the interpretive nature of ASCS handbook 5–CM.

It is, of course, true that this Court does not possess any *independent* grant of jurisdiction over either the plaintiffs' due process or APA claim. *See Alabama Hosp. Ass'n v. United States*, 228 Ct.Cl. 176, 180–81, 656 F.2d 606, 609–10 (1981), *cert. denied*, 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982). *Cabrera v. United States*, 10 Cl.Ct. 219, 221–22 (1986). The jurisdictional predicate to this dispute, however, does not rest upon the due process clause or the APA but rather in the contract entered into between the parties and/or upon 7 U.S.C. § 1445b–3 (1988), a statute considered to be money mandating. *Stevens v. United States*, 21 Cl.Ct. 195, 200 (1990). This Court does possess jurisdiction over contract disputes between the Government and private parties and over statutes considered to be money mandating. Further, the former United States Court of Claims declared "that where a claim appears to be within [the Court of Claims jurisdiction], as for example one founded on statute or contract, that claim is not removed from [the Court of Claims jurisdiction] merely because a plaintiff must make a constitutional argument to prevail." *Alabama Hosp.*, 228 Ct.Cl. at 181, 656 F.2d at 610. Therefore, since this Court has jurisdiction over the plaintiffs' instant dispute based upon the contract and a money mandating statute, the plaintiffs' notice claims are reviewable. *Id.* The Court concludes, however, that based on

any one of three alternate theories, the plaintiffs' notice claims are without merit.

First, it was clear from the regulation, 7 C.F.R. § 795.14, that a substantive change would be required in order to give rise to a change in farming operations sufficient to avoid combination for payment limitation purposes. Because of this, the issue of which internal agency handbook said what need not even be reached. The plaintiffs were specifically put on notice by this regulation that if they were to change the person combination decision that was applicable to them in 1985, a *substantive* change in farming operations was required. Examples of substantive changes were given. Any notice requirements that needed to be met were met at the time section 795.14 was first promulgated. It was then that the plaintiffs were put on notice and had their opportunity to comment in accordance with APA requirements.

Second, ASCS handbook 5–PA, the handbook in effect at the time crop year 1986 payment limitations were determined, specifically stated, at paragraph 399(D) quoted above, that no substantive change in farming operations would be found if "the same individuals or other entities continue to farm the same land, with the *same equipment.*" (Emphasis added.) The DASCO's combining of the plaintiffs into one "person" was based upon the factual conclusion that "the same individuals were farming the same land with the *same equipment.*" (Emphasis added.) App. at 44. It would be incongruous for this Court to accept the plaintiffs' alleged lack of notice as to what equipment arrangements would not be deemed substantive in light of paragraph 399(D), and the plaintiffs' admission that they knew of this provision before the April 1 payment limitation determination deadline. What any later ASCS handbook might have said is irrelevant. The plaintiffs knew of the "same equipment" provision before the deadline, from ASCS handbook 5–PA, and could have changed their operations accordingly.

The plaintiffs allege in their defense that the equipment leasing arrangement they entered into was analogous to that found in

**392**

Example No. 3 of 5–PA ¶ 399(D), and that, consequently, they fulfilled the specifications of 5–PA, in spite of paragraph 399(D)'s equipment requirements. In that example, however, the corporation discontinued its farming operations and only leased equipment. Such is not the case here. Don Schultz Farms, Inc., in addition to leasing equipment to Donald and Beverly Schultz, continued its farming operations.

Third and finally, the notice and comment requirements of the APA are required to be met only when an agency's action is legislative or substantive in character, and not merely interpretive. *See American Hosp. Ass'n v. Bowen,* 834 F.2d 1037 (D.C.Cir.1987). But "[d]etermining whether a given agency action is interpretative or legislative is an extraordinarily case-specific endeavor." *Id.* at 1045. A comparison of those provisions in ASCS handbooks 5–PA and 5–CM, regarding substantive change in farming operations, makes clear the lack of any change between the two handbooks which would require 5–CM to meet the notice and comment requirements of the APA. 5–CM ¶ 81(C)(4), set out above, contains the same strictures against finding a substantive change where the same equipment is being used as did 5–PA. ASCS handbook 5–CM contains nothing new or substantive on this point. Handbook 5–CM remains substantially the same as 5–PA. Thus, this Court finds those provisions of ASCS handbook 5–CM, which deal with substantive change in farming operations, to be interpretive in nature and thus exempt from the notice and comment requirements of the APA.

### CONCLUSION

For the above-stated reasons, the defendant's cross-motion for summary judgment is granted, the plaintiffs' motion for summary judgment is denied, and the complaint shall be dismissed.

No costs.