VAL FARMS, a Colorado Partnership; J.A. Vickers; Carolyn Vickers; W.E. Leslie; Linda Vickers; Susan Vickers; Gary Vickers; Gregory Vickers; John A. Vickers, III; The Preston Vickers Trust; Nancy Vickers; Jack M. Stern, Plaintiffs–Appellants,

v.

Mike ESPY, Secretary, U.S. Department of Agriculture, Defendant–Appellee.

No. 93–1330.

United States Court of Appeals, Tenth Circuit.

June 30, 1994.

Michael E. Hegarty (James R. Allison, Interim U.S. Atty., and Kathleen L. Torres, Asst. U.S. Atty., on the brief), Asst. U.S. Atty., Denver, CO, for appellee.

Alan R. Malasky (Lisa S. Kahn of Davis, Graham & Stubbs, Denver, CO, with him on the brief) of Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for appellant.

Before KELLY and BARRETT, Circuit Judges, and O'CONNOR *, District Judge.

---

* The Honorable Earl E. O'Connor, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

BARRETT, Senior Circuit Judge.

Appellants, VAL Farms, a Colorado partnership, and its eleven general partners, appeal from an order of the district court granting summary judgment in favor of the Secretary of Agriculture (Secretary). A brief summary of the relevant facts follows.

Congress has authorized the Secretary to implement and administer various programs regulating the production of basic agricultural commodities. See 7 U.S.C. §§ 1441, 1442, 1444, and 1445. One such program was the 1986 Feed Grains Price Support and Production Adjustment Program administered by the Secretary through the Agricultural Stabilization and Conservation Service (ASCS) and the ASCS's Deputy Administrator for State and County Operations (DASCO). Under the program, deficiency payments were made to participating producers who limited their grain production.

Participation in the 1986 program was voluntary and deficiency payments were limited to $50,000 "per person." 7 U.S.C. § 1308 (Supp. III 1985). 7 C.F.R. § 795.3 defined "person" as follows:

> Subject to the provisions of this part, the term "person" shall mean an individual, joint stock company, corporation, association, trust, estate, or other legal entity. In order to be considered a separate person for the purpose of payment limitation, in addition to the other conditions of this part, the individual or other legal entity must:
>
> (a) Have a separate and distinct interest in the land or the crop involved,
>
> (b) Exercise separate responsibility for such interest and
>
> (c) Be responsible for the cost of farming related to such interest from a fund or account separate from that of any other individual or entity.

Changes in farming operations could increase the number of persons entitled to deficiency payments. 7 C.F.R. § 795.14, "Changes in farming operations," provided in part:

> (a) Subject to the provisions of this part, a person may exercise his or her right heretofore existing under law, to divide, sell, transfer, rent, or lease his or her property if such division, sale, transfer, rental arrangement, or lease is legally binding as between the parties thereto.... Any change in farming operations that would otherwise serve to increase the number of persons for application of the payment limitation must be bona fide and substantive.
>
> (b) A substantive change includes, for example, a substantial increase or decrease in the size of the farm by purchase, sale, or lease; a substantial increase or decrease in the size of allotment by purchase, sale, or lease; a change from a cash lease to a share lease or vice versa; and dissolution of an entity such as a corporation or partnership.

Applications for participation in the 1986 program were submitted to county Agricultural Stabilization and Conservation (ASC) committees which were responsible for making "person" determinations for payment limitation purposes. County ASC committee determinations were monitored by state ASC committees which in turn were monitored by DASCO. Under the 1986 program, each partner in a general partnership was to be treated as a separate person for payment limitation purposes. 7 C.F.R. § 795.7.

During the 1985 crop year, VAL Farms was a general partnership comprised of five partners, four individuals and VFF, Ltd., a limited partnership. The general partnership farmed land in Yuma County, Colorado, and was considered three persons for deficiency payment purposes. Prior to the 1986 crop year, VAL Farms was reorganized. In conjunction therewith, VFF, Ltd. was dissolved and its six individual members and one trust member became general partners in VAL Farms. As a result of the reorganization Val Farms had eleven general partners.

Prior to the reorganization, several of the VAL Farms partners contacted Linda Whatley, an ASCS payment limitation specialist at ASCS's national office. After being apprised of the proposed reorganization, including the dissolution of VFF, Ltd., Whatley allegedly advised the partners that the dissolution of

VFF, Ltd. would be a substantive change for the purposes of recognizing the seven new general partners as separate persons for payment limitation purposes for the 1986 crop year. (Appendix, Vol. II at 0000028).

Whatley also allegedly suggested that the partners make capital contributions to the new partnership. *Id.* The partnership followed this advice and issued a capital call in the amount of $30,000. Each of the partners answered the capital call by contributing their proportionate share. VAL Farms's 1986 farming operations were conducted by the same persons, the same equipment, and on the same land as in 1985.

On September 11, 1986, the Yuma County ASC Committee ruled that VAL Farms consisted of ten separate persons for payment limitation purposes for the 1986 crop year. On July 14, 1988, the United States Department of Agricultural (USDA) Office of Inspector General (OIG) issued an audit report of Colorado person determinations for payment limitation purposes for the 1986 and 1987 crop years.

Within the report, the OIG concluded that VAL Farms should have been treated as three, as opposed to ten, separate persons for the 1986 crop year. Although the Yuma County ASC Committee and Colorado State ASC Committee disagreed with this conclusion, DASCO instructed the Colorado State ASC Committee to inform VAL Farms that the Yuma County ASC Committee's determination of ten separate persons for the 1986 crop year had been reversed based on the OIG's conclusion that VAL Farms should be treated as three separate persons for the 1986 crop year. VAL Farms appealed the determination.

Following a hearing, DASCO denied VAL Farms's appeal. In so doing, DASCO determined that: the dissolution of VFF, Ltd., a limited partnership, was not a substantive change because VFF, Ltd. was not the actual farm operator and its dissolution did not affect the farm operator; the seven new general partners of VAL Farms were not active members for the 1986 crop year because they did not contribute until after the April 1, 1986, status date; VAL Farms failed to substantiate that its partners had actually contributed the required capital contributions for their commensurate shares; Colorado Agri–Land, a partnership which owned the land on which VAL Farms was operating, provided financing for VAL Farms's 1986 farming operation by accepting the final payment of its land lease in February, 1987. (Appendix, Vol. 1 at 00009–00010). DASCO denied VAL Farms's subsequent Request for Reconsideration on essentially the same grounds as those set forth in its original determination.

Appellants then filed a complaint in district court seeking a declaratory judgment that the Secretary's determination that VAL Farms was three persons "for payment limitation purposes for the 1986 crop year was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law ... and that the partners of VAL Farms [were] entitled to be treated as ten (10) separate 'persons' for payment limitation purposes for the 1986 crop year." (Appendix, Vol. 2 at 0000013).

In answer, the Secretary alleged, inter alia, that his factual determinations were final and not subject to review by the district court and that he was reserving any and all rights to recover any amounts due and owing from appellants as a result of the determination that VAL Farms was three persons for the 1986 crop year. *Id.* at 0000018. Appellants moved for summary judgment after which the Secretary filed a cross-motion for summary judgment or, alternatively, for judgment on the record. *Id.* at 0000118.

The court, after noting that the "changes in farming operations [under § 795.14] that would otherwise serve to increase the number of persons for application of the payment limitation must be bona fide and substantial," and that "where the farm itself was not dissolved, where there does not appear to be any obvious change in the operations of the farming, and where it appears that what was changed indeed was the partnership relationship among the partners," (Appendix, Vol. 2 at 0000210–211), found that the Secretary's decision limiting appellants to three persons for payment limitation purposes for the 1986 crop year was not arbitrary and capricious,

an abuse of discretion, or a mistake in the law. *Id.* at 0000212. Thereafter, the court entered a judgment denying appellants' motion for summary judgment, granting the Secretary's motion for summary judgment, and dismissing appellants' administrative appeal. *Id.* at 0000215.

■ On appeal, appellants contend that DASCO, in ruling that they "were only three persons for the 1986 crop year ... misinterpreted and misapplied its own clear regulations, and failed to act in accordance with the evidence before it, in violation of 5 U.S.C. § 706(2)(A)." (Brief for Appellants at 25).[1]

Our review under § 706(2)(A) "is narrow, and the agency need only demonstrate that it considered relevant factors and alternatives after a full ventilation of issues and that the choice it made was reasonable based on that consideration." *Mount Evans Company v. Madigan,* 14 F.3d 1444, 1453 (10th Cir.1994), citing *Thomas Brooks Chartered v. Burnett,* 920 F.2d 634, 643 (10th Cir.1990). We will not substitute our judgment for the agency; we must uphold the agency if there is a rational basis for the decision. *Id.* at 643. "An agency's action will be set aside as unlawful if we are able to discern that the agency relied on factors which Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* at 644. Moreover, once an appeal is taken from a district court's review of an agency decision, " 'the identical standard of review is employed at both levels; and once appealed, the district court decision is accorded no particular deference.' " *Aulston v. United States,* 915 F.2d 584, 588 (10th Cir.1990), *cert. denied,*

500 U.S. 916, 111 S.Ct. 2011, 114 L.Ed.2d 98 (1991) quoting, *Webb v. Hodel,* 878 F.2d 1252, 1254 (10th Cir.1989).

Under § 795.14, "[a]ny change in *farming operations* that would otherwise serve to increase the number of persons for application of the payment limitation must be bona fide and substantive." (Emphasis added). Here, it is uncontested that the only change in VAL Farms from the 1985 crop year to the 1986 crop year was that the number of general partners was increased from five in 1985 to eleven in 1986. During the April 17, 1990, administrative hearing, Jack M. Stern, one of the VAL Farms general partners and one of the appellants herein testified:

A. ... there was no value established because there was no transaction that took place at the Val Farms level or by reason of the dissolution of VFF Limited that would have required a valuation. It was an accounting mechanism if you would.

\*　　\*　　\*　　\*　　\*　　\*

Q. Jack, when the general partnership [VAL Farms] took on these new members, was there any change in the size of the operation at all? Did they continue to farm the same land?

A. Everything was the same. There was no change.

Q. Okay.

A. There wouldn't be a change. Why should there be a change, I guess?

Q. I think that's what we're trying to establish, that there wasn't any change.

A. There was no change in the manner in which VAL Farms operated.

(Appendix, Vol. 1 at 00001–00002).

Inasmuch as the "farming operations" of VAL Farms did not change between the 1985 and 1986 crop years, we hold that DASCO's

---

1. 5 U.S.C. § 706(2)(A) provides:
   To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

   \*　　\*　　\*　　\*　　\*

   (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

   (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law:

determination that the dissolution of VFF, Ltd. was not a substantive change for purposes of § 795.14 was reasonable. We further hold that the conclusion that appellants were only three persons for purposes of the 1986 crop year was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. See *Schultz v. United States*, 25 Cl.Ct. 384, 389 (1992) (no substantive change in farming operations where the only change was that parents, who owned 100% of family corporation stock in 1985, gifted 50% of the stock to two daughters in 1986).

Appellants' allegations that they established that the seven new general partners of VAL Farms were active members for the 1986 crop year, the partners had contributed the required capital contributions for their shares, and that the land lease between VAL Farms and its landlord did not constitute financing, in nowise undermines the integrity of DASCO's determination that the dissolution of VFF, Ltd. was not a substantive change under § 795.14 and that appellants were only three persons for the 1986 crop year.

It is only "bona fide and substantive" changes in "farming operations" that "serve to increase the number of persons for application of the payment limitation" under § 795.14. Here, as evidenced by Jack Stern's testimony, there was absolutely no change in VAL Farms's "farming operations" from 1985 to 1986 as a result of the dissolution of VFF, Ltd.

█ We also reject appellants' contention that they were entitled to equitable relief under 7 C.F.R. §§ 795.24 and 790.2 [2] because of their good faith reliance on the Yuma County ASC Committee's determination that they were ten persons for purposes of the

1986 crop year and on Ms. Whatley's advice. Appellants argue that "[t]he Administrative Record also contains uncontradicted evidence that plaintiffs relied upon Ms. Whatley's advice," and that "[w]ithout receiving this advice in February 1986, plaintiffs would not have reorganized VAL Farms by dissolving VFF." (Brief for Appellants at 43). This contention is inconsistent with appellants' prior argument that:

> Prior to the 1986 crop year, VAL Farms was reorganized. VFF, Ltd. was dissolved for tax reasons and as part of a long-term plan to make its individual and trust members general partners in the VAL Farms partnership.... The dissolution of VFF, Ltd. was the final step in this long-term plan.

(Brief for Appellant at 12). Under these circumstances, we hold that appellants have failed to establish that they are entitled to equitable relief under §§ 795.24 and 790.2.

**AFFIRMED.**

---

**2.** § 795.24 provides: If a producer relied on a county committee and/or State committee "person" determination for a crop year and higher reviewing authority makes a more restrictive determination, the Deputy Administrator may grant relief only for such crop year if the producer was not afforded an opportunity to exercise other alternatives with respect to the producer's farming operation and the program provisions and the county committee has determined that the producers acted in good faith based upon the original "person" determination.

§ 790.2(a) provides in part: Notwithstanding any other provisions of law, performance rendered in good faith reliance upon action or advice of any authorized representative of a county committee or State committee ... and price support may be extended or payment may be made therefor in accordance with such action or advice to the extent it is deemed desirable in order to provide fair and equitable treatment.