N.L. DURANT, Jr. and J.R. Durant

v.

The UNITED STATES.

No. 547–86C.

United States Claims Court.

Dec. 2, 1988.

Lawrence C. Melton, Washington, D.C., for plaintiffs.

Stuart James, Dept. of Justice, Washington, D.C., for defendants.

## OPINION

MARGOLIS, Judge.

This contract action against the United States Agriculture Stabilization and Conservation Service (ASCS) is before the court on plaintiffs' motion for summary judgment and defendant's cross motion. Plaintiffs, the DuRant brothers, allege that the ASCS failed to make payments to them as required under a Feed Grain Program Contract. After a careful review of the record and after hearing oral argument, the defendant's cross motion for summary judgment is granted, and the plaintiffs' motion for summary judgment is denied.

### FACTS

Plaintiffs N.L. DuRant, Jr. and J.R. DuRant are farmers and producers of wheat and feed grain in Clarendon County, South Carolina. The plaintiffs contracted with the ASCS and agreed to withhold a portion of their lands from productive use in return for the right to receive certain payments from the government pursuant to the Agricultural Adjustment Act of 1949, as amended. 7 U.S.C. §§ 1281 et seq. Plaintiffs filed a Form ASCS–477, a Contract to Participate in the 1985 Price Support and Production Adjustment Programs on February 26, 1985. For the 1985 farm year, the program provided payment incentives of up to $50,000 for each eligible "person" who was approved by ASCS and participated in the program. The actual amount received was dependent upon the acreage devoted to the program.

Plaintiffs' case involves a contractual dispute over the number of payments to which plaintiffs were entitled under the program. The plaintiffs claim that the ASCS erroneously determined that both plaintiffs and their farming operation constituted one "person" and, therefore, were only entitled to one maximum payment, instead of the two payments for which plaintiffs applied. Accordingly, plaintiffs seek recovery of $45,000 from ASCS, representing payment for the extra acreage plaintiffs set aside with the expectation of qualifying as two "persons," minus $5,000 obtained through leasing their unused land.

When the plaintiffs began farming in 1960, they operated under a partnership agreement in which each brother held an undivided 50% interest in the land and the farming equipment. In 1975, however,

plaintiffs incorporated as DuRant Brothers, Inc. with farming equipment as the corporation's only asset. Each brother owned 50% of the stock of the corporation. The partnership continued to own the farm land and leases. Plaintiffs allege that they also continued to personally guarantee the funds needed for the farming operation.

On March 22, 1985, plaintiffs submitted a Farm Operating Plan for Payment Limitation Review (Farm Plan) to the Clarendon County ASCS Committee for a determination that the plaintiffs were separate "persons" entitled to two payments under 7 C.F.R. § 795.3. On April 18, 1985, the County Committee approved plaintiffs' request for a determination of two separate "persons" for payment limitation purposes subject to State Committee review. On May 8, 1985, the state Committee requested additional information from the plaintiffs to make its "person" determination. On June 21, 1985, the County Committee supplied the State Committee with the corporation's articles of incorporation, individual and corporate tax returns for 1984VP and a statement from the plaintiffs. Further information was provided on June 28, 1985.

The State Committee held a hearing on August 13, 1985 to determine whether plaintiffs were considered one or two "persons" under the regulations. After the hearing, which the plaintiffs and their CPA attended, the State Committee concluded that the partnership did not conduct a farming operation completely separate from the corporation. The State Committee based this conclusion, in part, on the corporation's income tax return in which all expenses for the entire farming operation were charged to the corporation. Plaintiffs appealed this determination to the ASCS Deputy Administrator. Following a hearing on October 2, 1985, the Deputy Administrator affirmed the State Committee's decision on November 1, 1985.

Plaintiffs allege that they contracted for two payment limitations by unilateral or implied-in-fact contract with the government. Alternatively, plaintiffs claim that ASCS is estopped from reversing its determination that the plaintiffs are two "persons" because plaintiffs relied to their detriment on the County Committee's initial determination. Moreover, plaintiffs contend that the ASCS's determination that plaintiffs constituted but one "person" was arbitrary, capricious, not supported by the record, and contrary to law. The plaintiffs seek $45,000 in damages—the difference between one and two payments minus $5,000 obtained through leasing part of the land plaintiffs devoted to the program in expectation of two payments.

Defendant states that the State Committee has authority under 7 C.F.R. § 713.2(c) to review and correct a determination by the County Committee that is not in compliance with applicable regulations. The defendant further argues that it has neither breached a unilateral contract nor an implied-in-fact contract with plaintiffs, and that this court does not have jurisdiction to entertain plaintiffs' estoppel theory.

### DISCUSSION

#### A. Estoppel

■ Plaintiffs maintain that the government is obligated to pay them a total of $100,000, $50,000 for each plaintiff, because they set aside certain farmland pursuant to the federal price stabilization program. Plaintiffs base their action on a theory of equitable estoppel, stating that the government's agent, the County Committee, which approved plaintiffs' Farm Plan, did so with authority and knowledge of plaintiffs' compliance with the program. Additionally, plaintiffs allege that they relied to their detriment by devoting twice as much acreage to the program as they would have if they had known of their actual payment limitation.

■ The defendant asserts that plaintiffs have incorrectly characterized their theory as based on equitable estoppel, when in fact the action is one for promissory estoppel. The distinction between promissory estoppel and equitable estoppel is central to determining whether this court has jurisdiction over the action. Because the Claims Court is a court of specific

jurisdiction, the court must strictly construe the waiver of sovereign immunity set forth in the Tucker Act, 28 U.S.C. § 1491. Because the Tucker Act is interpreted to allow causes of action founded only on express or implied-in-fact contracts, the doctrine of promissory estoppel is not within the parameters of the Claims Court's jurisdiction. *Biagioli v. United States*, 2 Cl.Ct. 304, 308 (1983).

At first glance, plaintiffs' case may appear to be based on equitable estoppel. Plaintiffs rely on several cases in which equitable estoppel was applied against the government, despite the longstanding reluctance to allow its use. See *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 382–86, 68 S.Ct. 1, 2–4, 92 L.Ed. 10 (1947) (equitable estoppel not allowed against the government). But see *Sun Il Yoo v. Immigration & Naturalization Service*, 534 F.2d 1325, 1329 (9th Cir.1976) (holding that after a one year delay the government was estopped from denying petitioner the benefit of pre-certification for adjustment of his immigrant status); *United States v. Lazy FC Ranch*, 481 F.2d 985, 989 (9th Cir.1973) (holding that the government was estopped to deny government contract even though the regulations prohibited the contract, and government could not recover funds paid to defendants); *United States v. Kopf*, 379 F.2d 8, 12–14 (8th Cir.1967) (holding that the Secretary of Agriculture could not redetermine a final and binding crop yield determination after plaintiff had complied with the program). Plaintiffs' reliance on these equitable estoppel cases, however, is misplaced. Upon closer examination, it is clear that plaintiffs' claim is based on a theory of promissory estoppel, which is not cognizable in this court. See *Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir.1981).

▆ Promissory estoppel is a doctrine for enforcing promises which reasonably induce action or inaction and which are binding to the extent necessary to avoid injustice. In *Jablon*, the Ninth Circuit Court of Appeals recognized that "promissory estoppel is used to create a cause of action, whereas equitable estoppel is used to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute." *Id.; Schuhl v. United States*, 3 Cl.Ct. 207, 210–11 (1983). Accordingly, the court indicated that "[p]romissory estoppel is a sword, and equitable estoppel is a shield." *Jablon*, 657 F.2d at 1068. The gravamen of plaintiffs' estoppel argument is that the government, acting through the County Committee, promised them payment as two "persons" and that injustice can be avoided only by enforcing this alleged promise. As in *Jablon*, plaintiffs in this case do not use the estoppel theory to shield against a government defense or action, but rather as a sword to create a cause of action. Therefore, this court does not have jurisdiction to entertain plaintiffs' theory.

Plaintiffs also rely upon *Lazy FC Ranch* to support their assertion that equitable estoppel applies. In that case, the County and State ASCS Committees both found that defendants' partnership qualified as multiple persons for participation in a program under the Soil Bank Act, 7 U.S.C. § 1801 et seq. 481 F.2d at 986. Four years later, the State Committee reversed its determination and held that defendants' contracts violated the regulations, making them ineligible for multiple-person status. The government then instituted a suit to recover funds paid to defendants under the multiple-person status. The court held that the government was equitably estopped because allowing the State Committee to retroactively change the partnership's status after defendants detrimentally relied on it would work an injustice on the defendants. *Lazy FC Ranch*, 481 F.2d at 989–90.

In *Lazy FC Ranch*, defendants used equitable estoppel as a shield to bar the government from changing its position. See also *Sun Il Yoo*, 534 F.2d at 1329. Here, however, as previously stated, plaintiffs rely on an estoppel theory to create a cause of action. Also, unlike *Lazy FC Ranch*, where there was a four year delay in reviewing the County determination, plaintiffs' eligibility was promptly reviewed by the State Committee. The State Com-

mittee's review was timely and did not, as plaintiffs assert, violate the principles of "justice and fair play" on which the doctrine of equitable estoppel is founded. *Lazy FC Ranch,* 481 F.2d at 989 (quoting *Schuster v. C.I.R.,* 312 F.2d 311, 317 (9th Cir.1962)).

■ Assuming that plaintiffs' action is based on a theory of equitable estoppel, the facts nevertheless fail to satisfy the required elements. These elements are:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must have relied on the former's conduct to his injury.

*Emeco Industries, Inc. v. United States,* 202 Ct.Cl. 1006, 1015, 485 F.2d 652, 657 (1973) (quoting *United States v. Georgia–Pacific Co.,* 421 F.2d 92, 96 (9th Cir.1970)).

The plaintiffs were on notice that the determination by the County ASCS Committee that they were two "persons" for purposes of the program was not final. Seven C.F.R. § 713.2 provides that "State and county committees, and representatives and employees thereof, do not have authority to modify or waive any of the provisions of the regulations of this subpart...." Pursuant to 7 C.F.R. § 713.2(c), the State Committee has the responsibility to review and correct any action taken by a County Committee that is inconsistent with the regulations. Further, the ASCS Administrator may modify or review any determination made by a State or County committee. 7 C.F.R. § 713.2(b). Accordingly, plaintiffs could not reasonably rely on such a determination, knowing it was not final.

■ Because both the plaintiffs and the County Committee were aware that the State Committee had the right to review the initial determination, it cannot be successfully argued that the second element, that the County Committee intended the plaintiffs act upon its determination, was met. Rather, plaintiffs knew or should

have known that they could not rely on the County Committee's determination. See *Merrill,* 332 U.S. at 384, 68 S.Ct. at 3. As the Supreme Court has often stated "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Heckler v. Community Health Services,* 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984). As a participant in the program administered by the ASCS, plaintiffs are charged with knowledge of the applicable regulations. See *United States v. Batson,* 706 F.2d 657, 681 (5th Cir.1983). Therefore, the elements of equitable estoppel have not been demonstrated.

**B. Unilateral Contract**

■ Plaintiffs further assert that the defendant is obligated to pay them under a unilateral contract because the County Committee's acceptance of plaintiffs' 1985 Farm Plan served as an offer that plaintiffs accepted by their action of withholding the specified acreage of land. However, an express contract, Form ASCS–477, existed between the parties, and its terms were set by regulations, 7 C.F.R. §§ 713 et seq., rather than by the County Committee's approval of plaintiffs' Farm Plan.

As this court stated, a "contract is an agreement or mutual assent by the parties, manifested in words, oral or written." *People's Bank & Trust Co. v. United States,* 11 Cl.Ct. 554, 566 (1987). In order to create an irrevocable offer, the plaintiffs must demonstrate that there was mutuality of intent. As both the plaintiffs and the County Committee were aware, the County Committee's decision was subject to review. Therefore, plaintiffs cannot show the required mutuality of intent needed to create an irrevocable offer. *Id.*

Plaintiffs, however, rely on *United States v. Kopf* to support the assertion that the County Committee's approval of the Farm Plan was an irrevocable offer. Plaintiffs' reliance on *Kopf* is inapposite. In *Kopf,* the Eighth Circuit held that once the County Committee's determination became final and binding on the participants, be-

cause the State Committee declined to review it, the government could not retroactively alter the decision. *Kopf,* 379 F.2d at 13. The County Committee's initial determination was followed by an evidentiary hearing held in accordance with the Secretary of Agriculture's regulations. According to the regulations, after this hearing the County Committee's decision became final when the State Committee declined to review it.

In this case, however, the State Committee is not attempting to review a determination that has become final and binding by regulation. Here the State Committee properly reviewed the County Committee's decision. Further, in *Kopf,* the court did not hold that the County Committee's determination was irrevocable merely because the farmer relied on it, but rather because the government did not seek to review it when the opportunity existed after the hearing. Under the Agricultural Adjustment Act of 1949, the government has the right to review its agent's decisions. Thus, plaintiffs' argument that the defendant is bound by a unilateral contract is unpersuasive.

### C. Implied-in-Fact Contract

■■■■ Plaintiffs also argue that the parties' conduct, the County Committee's determination, and plaintiffs' compliance with this determination created an implied-in-fact contract. Whether an implied-in-fact contract exists is determined by "the conduct of the parties and the other circumstances surrounding the transaction." *People's Bank & Trust Co.,* 11 Cl.Ct. at 566. The parties must manifest the same mutuality of intent as needed to create an express contract. *Id.* It is not necessary to ascertain whether the elements of an implied-in-fact contract are present in this case. An implied-in-fact contract cannot exist where an express contract already defines the parties rights and obligations on the identical subject matter. *Blue Cross and Blue Shield Association v. United States,* 13 Cl.Ct. 710, 716 (1987), aff'd, 852 F.2d 1294 (Fed.Cir.1988).

An express contract between the government and the plaintiffs was embodied in Form ASCS–477, the Contract to Participate in the 1985 Price Support and Production Adjustment Programs. The "person" determination is not made in isolation of the creation of this express contract, but is an essential part of the express contract. Because plaintiffs' implied-in-fact contract argument is grounded on the same facts as the express contract, the existence of the express contract precludes the court from finding an implied-in-fact contract.

### D. Review of Final Administrative Action

■■■■ Finally, plaintiffs allege that the ASCS determination that their operation constituted one "person" was erroneous. This argument can succeed only if the ASCS decision was "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Pasternack v. United States,* 12 Cl.Ct. 707, 710 (1987). Plaintiffs have the burden of proving that the decision was erroneous. De novo judicial review is impermissible. *Hilo Coast Processing Co. v. United States,* 7 Cl.Ct. 175, 176 (1985). Administrative determinations of fact are final and unreviewable except as to questions of law, or allegations and proof that such decisions are arbitrary or capricious. *Gross v. United States,* 205 Ct.Cl. 605, 618, 505 F.2d 1271, 1279 (1974).

The standard of review applied to an agency decision is deferential. Only if the agency decision does not have a rational basis should the court disturb it. See *Hilo Coast,* 7 Cl.Ct. at 177. As long as the agency's construction is reasonable, the "court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The standard for determining whether the administrative decision is supported by substantial evidence is "not what the court would believe on a de novo appraisal, but whether the administrative determination is supported by substantial evidence on the record as a whole." *Brewer v. United States Postal Service,* 227 Ct.Cl. 276, 279, 647 F.2d 1093, 1096

(1981), cert. denied, 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982).

Seven C.F.R. §§ 713 et seq. set forth the terms that participants, such as plaintiffs, must comply with to qualify for the benefits of the program. To be eligible for the program, "the producer must be a person who shares in the risk of producing the program crop produced in the current year (or shares in the proceeds therefrom) on the farm for which the contract is submitted. . . ." 7 C.F.R. § 713.50(b). Section 795.3 provides criteria for determining when individuals constitute either one entity or separate "persons" for purposes of payment and states:

> In order to be considered a separate person for the purpose of payment limitation, in addition to the other conditions of this part, the individual or other legal entity must:
>
> (a) Have a separate and distinct interest in the land or the crop involved,
>
> (b) Exercise separate responsibility for such interest, and
>
> (c) Be responsible for the cost of farming related to such interest from a fund or account separate from that of any other individual or entity.

To be eligible for each requested maximum payment, plaintiffs must satisfy all section 795.3 requirements. The County Committee found that the plaintiffs qualified as separate "persons." But according to the corporation's and the plaintiffs' individual tax returns, the corporation, and not the plaintiffs, was responsible for all the costs of farming. The County Committee, unlike the State Committee, did not examine these tax returns. Therefore, on the basis of the tax returns, the State Committee reasonably determined that plaintiffs qualified for only one payment. Because the agency's decision is consistent with the applicable regulations and the facts in the record, the court will not disturb it.

Plaintiffs assert that the government's redetermination has no rational basis because the critical term "partnership" was never defined by the government. However, the regulations do define entities or joint operations not considered as a "person" for eligibility purposes, of which a partnership is a prominently listed subcategory. 7 C.F.R. § 795.7. Plaintiffs' assertion is therefore without merit. Additionally, the government's characterization of plaintiffs as a corporation is consistent with the "Examples for Person Determinations for Payment Limitation" distributed by DOA. Plaintiffs' Reply Brief, Exhibit 4.

While plaintiffs allege that reliance on the tax returns was improper, the regulations do not limit the evidence that may be reviewed in making the eligibility determination. In this case, the tax returns clearly are probative. The State Committee properly considered the plaintiffs' tax returns which revealed that all expenses for the entire farming operation were deducted from the corporation's tax return, rather than the plaintiffs' individual tax returns. The returns indicate that each plaintiff received "rent" from the corporation for the use of the farmland and facilities. Plaintiffs therefore have not fulfilled the burden of showing any deficiencies in ASCS's administrative decision. Rather, the State Committee's determination that the plaintiffs' corporation qualified as a single "person" was fully consistent with the regulations. Thus, ASCS's decision is not arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

## CONCLUSION

Although it is unfortunate that the plaintiffs set aside more land for non-productive purposes than they could receive payment for, the government properly reviewed and corrected the County Committee's determination. For the foregoing reasons, plaintiffs' motion for summary judgment is denied, and defendant's cross motion for summary judgment is granted. The Clerk will dismiss the complaint. Each party will bear its own costs.