**Barrett ROCHMAN, Marilyn Rochman, James Rochman & William Burns, Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**No. 376–88C.**

United States Court of Federal Claims.

Nov. 24, 1992.

John A. Vassen, Belleville, Ill., for plaintiff.

John S. Groat, Commercial Litigation Branch, Civil Div., Dept. of Justice, Washington, D.C., with whom were David M. Cohen, and the Asst. Atty. Gen., for defendant.

## OPINION

HORN, Judge.

### BACKGROUND

This contract action comes before the court on defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, and plaintiffs' Cross–Motion for Summary Judgment. Plaintiffs seek judgment

against the United States to recover approximately $16,000 as a special bonus authorized under the Commodity Credit Corporation's (CCC) Conservation Reserve Program (CRP). The CRP is administered under the general supervision of the Agricultural Stabilization and Conservation Service (ASCS) of the United States Department of Agriculture. Defendant contends that plaintiffs fail to state a claim showing that they are entitled to relief, as required by Rules of the United States Claims Court (RUSCC) 8(a), and, therefore, fail to state a claim upon which relief can be granted under RUSCC 12(b)(4).[1] Specifically, defendant asserts that plaintiffs fail to state, anywhere in their complaint, that "anyone with authority to act for the United States ever entered into this alleged contract."

Both parties waived oral argument on the motions. After carefully reviewing the abbreviated submissions of the parties, the relevant documents and the applicable statutory, regulatory and case law, the court, hereby, DENIES plaintiffs' cross-motion for summary judgment and GRANTS defendant's motion to dismiss, as is more fully discussed below.

## FACTS

Plaintiffs claim jurisdiction in this court based on the Commodity Credit Corporation Charter Act, 15 U.S.C. § 714b(c) (1986), and the Tucker Act, 28 U.S.C. § 1491 (1988). The Tucker Act states: "[t]he United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States...." 28 U.S.C. § 1491 (1988). In addition, 15 U.S.C. § 714b(c) provides that the CCC: "May sue and be sued, but no attachment, injunction, garnishment, or other similar process, mesne

or final, shall be issued against the Corporation or its property." 15 U.S.C. § 714b(c) (1986).[2]

The Conservation Reserve Program is one of the conservation initiatives contained in the Food Security Act of 1985, designed to reduce soil erosion. 16 U.S.C. § 3831 (1986). Under the applicable regulations and the contract entered into under the CRP, owners and operators of highly erodible cropland agree to cease production on the highly erodible land for a ten (10) year period and to devote this land to conservation uses. The Secretary of Agriculture is authorized to enter into contracts and make payments to eligible owners and operators of highly erodible cropland in order to assist them in conserving and improving the soil and water resources of their farms and ranches. The conservation is accomplished by converting such land to permanent vegetative cover in accordance with an approved conservation plan. 7 C.F.R. § 704.1 (1987).

The CCC, a wholly-owned federal corporation, which is also supervised by the Secretary of Agriculture, was created, in pertinent part, to stabilize, support, and protect farm income and prices, to assist in maintaining balanced and adequate supplies of agricultural commodities, and to facilitate their distribution. 15 U.S.C. § 714 (1982).

The Secretary of Agriculture has authority to determine and approve conservation reserve programs, and the extent to which those operations should be carried out. 7 C.F.R. § 704.1 (1987). Administration of the Conservation Reserve Program is delegated to the Department of Agriculture's Administrator of the ASCS. 7 C.F.R. § 704.3 (1987). The program is carried out in the field by state and county committees. Farmers within a county elect persons to

1. Following the enactment of P.L. 102–572 (1992), the United States Claims Court was renamed the United States Court of Federal Claims. The Rules will be renamed to conform shortly. The Rules at issue herein are unaffected by the legislation, other than with respect to the name change of the court.

2. Plaintiffs originally also purported to bring their action pursuant to 28 U.S.C. §§ 2201, and 2202, which empower the court to grant a de-

claratory judgment under appropriate circumstances. However, courts have held without qualification that the CCC is immune from injunctions. *Raines v. United States*, 12 Cl.Ct. 530, 533 (1987) (citing *Stroud v. Benson*, 254 F.2d 448, 450 (4th Cir.1958), *cert. denied*, 358 U.S. 817, 79 S.Ct. 28, 3 L.Ed.2d 59 (1958); *Moon v. Freeman*, 245 F.Supp. 837, 839 n. 3 (E.D.Wash., 1965)).

be on the county ASCS committee. County committees administer the commodities programs at the local level by entering into farm program contracts and by determining program eligibility. The state ASCS committee, made up of three to five farmers appointed by the Secretary of Agriculture, supervises the county committees and administers programs on a state-wide basis. At the federal level, the Deputy Administrator, State and County Operations (Deputy Administrator) supervises the state committees. *See Raines v. United States*, 12 Cl.Ct. 530, 532 n. 2 (1987).

The facts of the case appear to be undisputed.[3] Plaintiffs, Barrett Rochman, Marilyn Rochman, James Rochman and William Burns, who are owners of farm land located in Union County, Illinois, applied to enter the CRP program. On August 13, 1986, Barrett Rochman, Marilyn Rochman, James Rochman and Kenneth Rochman executed a CRP contract for farm number 1833, tract T–1718, with a total of approximately 281.8 acres. On this form, the plaintiffs listed Barrett and Marilyn Rochman as owning eighty percent (80%) of the subject property and James Rochman as owning twenty percent (20%). Under the terms of the agreement, the plaintiffs agreed to set aside the subject acreage for conservation purposes and manage it according to an approved conservation plan for ten years from 1987 to 1996. In exchange for the plaintiffs' ten-year commitment, plaintiffs were to receive a $60.00 rental rate per acre. On January 15, 1987,

Keith Glasco signed the CRP form as authorized CCC representative.

On January 20, 1987, Secretary of Agriculture Richard E. Lyng announced a one-time, one-year bonus for the 1987 crop to be paid in the form of an increased annual rental payment. This bonus was limited to first time CRP contracts, submitted during the program's fourth sign-up period from February 9 through February 27, 1987, and appears to have become payable only when a 1987 CRP contract was accepted by the CCC. The Secretary's announcement of the program stated: "This offer is limited to new CRP contracts effective beginning with the 1987 crop year. It is not retroactive for corn base acreage under CRP contracts already signed." "This additional rental payment will be made at the time new 1987 CRP contracts are accepted."

Apparently in an attempt to qualify for the bonus, on February 17, 1987, plaintiffs James Rochman, Barrett Rochman and William Burns filled out two additional CRP forms. The first form was for farm number 2087, tract T–9738, with 69.1 total acres, also to receive a $60.00 per acre rental rate and for a contract period from 1987 to 1996. On this form the owners are listed as James Rochman (20 percent), Barrett Rochman (40 percent), and William Burns (40 percent). The second form was for farm number 2088, tract T–9739, reflecting 254.1 total acres, albeit the acreage numbers on the face of the form do not add up to the total shown. This form for farm number 2088 lists the owners of the proper-

---

**3.** Both plaintiffs and defendant minimized their filings to the court in this case. Defendant filed the following not very helpful document:

*DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT*

Defendant respectfully submits its proposed findings of uncontroverted fact, as follows:

1. The alleged contract upon which plaintiffs rely, Attachment B to the complaint, fails to reflect that anyone acting with authority has every entered into the contract on behalf of the United States.

Also, strangely enough, in view of the alternative motions filed, either to dismiss or for summary judgment, the defendant in its "Statement of Genuine Issues" wrote:

For the limited purpose of the Court's consideration of plaintiffs's motion for summary judgment, we have no exceptions to plain-

tiffs's proposed findings of uncontroverted fact. We note that many of the proposed finding are unsupported by our responses to the complaint, upon which plaintiffs rely. However, in the interest of facilitating a speedy resolution of this matter, we do not object to the proposed findings upon that basis.

Plaintiffs filed only a slightly more informative document, titled "Proposed Findings of Fact." Fortunately, however, the parties filed copies of the relevant contract documents as attachments to their briefs, from which, combined with the somewhat confused, and sometimes inconsistent, factual recitation in the Second Amended Complaint, and other papers filed by the plaintiff, the court was able to piece together the relevant facts in the case.

ty as Barrett Rochman (80 percent) and James Rochman (20 percent), also to receive a $60.00 rental rate, strangely lists the contract period not for ten years, but from 1987–1988. Most significant, however, is the fact that neither of these two additional contracts was signed by a CCC representative.

Nonetheless, plaintiffs claim that the two February 17, 1987 applications are valid and enforceable contracts, even though neither is signed by a CCC representative, because the United States Department of Agriculture subsequently executed two additional applications (for the same farm numbers) submitted by plaintiffs. The first additional application was for farm number 2087. It was signed by plaintiffs James Rochman and Barrett Rochman on December 1, 1987 and by plaintiff William Burns on November 11, 1987. The second application was for farm number 2088, and was signed by plaintiffs James Rochman, Marilyn Rochman and Barrett Rochman on December 1, 1987. Both contracts for farm numbers 2087 and 2088 appear to have been signed on December 4, 1987, by a CCC representative, whose name, however, is illegible on the document submitted to the court by plaintiffs.

Plaintiffs acknowledge in their reply brief that the documents for farm numbers 2087 and 2088, which are dated February 17, 1987, within the three-week period of eligibility for the bonus, do not bear accepting signatures of the United States. Nonetheless, the plaintiffs argue, albeit somewhat incoherently, that:

1. Attachment B to the second amended complaint, Exhibit B, shows a Conservation Reserve Program Contract without accepting signatures of the United States. This was part of the confusion between plaintiff and defendant during discovery, but the United States Department of Agriculture subsequently did sign new contracts pursuant to Ex-

hibit B of the second amended complaint. These contracts are attached as Exhibit 1 to this reply, and show the accepted signatures by the United States.

2. Plaintiff's contention that the 1986 contract is void is based upon the language contained in the Conservation Reserve Program Contract specifically stating, 'By signing below, the Owner and Operator also agree to allow CCC a period of 30 days from the close of the applicable signup period to accept this Contract and agree to pay liquidated damages in an amount specified in the Appendix if the Owner and Operator do no [sic] allow CCC such 30–day period in which to execute this Contract.' Exhibit A of plaintiff's second amended complaint, clearly shows the CCC as represenature [sic] of the United States signature dated outside of the 30 day period as required in the contract.

In order to qualify for the bonus, plaintiffs are trying to construct an argument that only the two second contracts were valid. Plaintiffs seem to be alleging that the unexecuted February 17, 1987 documents somehow can be validated by the later documents signed in November or December 1987. Plaintiffs also allege that the first Conservation Reserve Program contract entered into on August 13, 1986, was not a valid contract for two reasons. First, plaintiffs claim that William Burns was an owner of Farm number 1833.[4] According to plaintiffs, Mr. Burns was a necessary party to the contract, but failed to execute the contract, and, thus, the contract is invalid. Second, plaintiffs allege that defendant was to accept the contract within thirty days from the close of the signup period and failed to do so, thus rendering the contract unenforceable. Plaintiffs claim that the signup period ended August 15, 1987, and that the CCC did not accept the contract until January 15, 1987, after the signup period had expired.[5]

---

4. This assertion is contradicted by the plaintiffs' representation on the CRP contract that Farm number 1833 was owned entirely by Barrett Rochman (80%) and James Rochman (20%).

5. Presumably, the first date was a typographical error in the plaintiffs' brief and plaintiffs meant to state that the signup period ended August 15, 1986. Moreover, although plaintiffs try to contend that they submitted their initial CRP–1 form on August 15, 1986, the third page of the

Pursuant to his appeal rights under the applicable regulations, Barrett Rochman, through his attorney, submitted an appeal to the government, after a determination that the August 15, 1986 contract was valid, making the plaintiffs ineligible for the new signup bonus.[6]

As a result of an informal telephone hearing, the Deputy Administrator notified plaintiff of the agency determination:

> The record shows that your client's August 1986 application to participate in the CRP was approved. The record also shows on January 6, 1987, Mr. Rochman met with the Union County ASC Committee to inform it that there were other owners on the unit covered by the CRP contract (Mr. and Mrs. William J. Burns). He pointed out that the Burns had not signed the CRP contract and that it was his opinion that the contract was invalid based on the fact that all of the owners did not sign the contract. The county committee determined the contract was valid and denied your client's request to terminate his CRP contract. The State committee affirmed the county committee's action. Your client subsequently appealed to this level.

> We understand your client's position in the matter to be that he does not have a CRP contract. Mr. Rochman believes his contract is invalid. You stated during the hearing that Mr. Rochman's property is located in Illinois. You also stated that under Illinois law, all parties (owners) must sign. You further state that Mr. and Mrs. Burns did not sign the CRP contract. It is your client's contentions that he was hurried by ASCS when he went to the county office to file an application to participate in the CRP. Allegedly, adequate time was not provided Mr. Rochman to make a logical decision. Additionally, Mr. and Mrs. Burns did not

> want to participate in the 10-year program. Since the Burns did not sign the contract, you allege ASCS was required to have them (Burns) sign a waiver. We further understand your client believes there are many flaws in the contract approval process. You noted that your client filed an application in August 1986. His contract was not approved until January 1987. It is your position that ASCS should have approved Mr. Rochman's contract within 30 days of his filing. Based on the aforementioned, you believe your client's contract is invalid.

> In our review of your client's entire case file, including the information provided during the informal telephone hearing, we could find no justification to grant relief. We have determined your client's CRP contract is valid. All owners are not required to sign. Mr. Rochman may withdraw from the program; however, he will be subject to appropriate penalties as outlined in the CRP-1 (Appendix). Mr. Rochman's appeal is denied. This concludes the administrative appeal rights afforded at 7 C.F.R. Part 780, Appeal Regulations.

Plaintiffs then filed an action in the United States District Court for the Southern District of Illinois seeking a declaratory judgment against CCC. *Rochman v. United States*, No. 88–4087 (S.D.Ill., March 17, 1988). The District Court Judge issued an Order on June 22, 1988, granting plaintiffs' Motion to Transfer because the District Court found it was without jurisdiction. Subsequently, the case was transferred to this court. In their second amended complaint, currently before this court, plaintiffs ask this court to hold that the August 13, 1986 contract is invalid. Plaintiffs also ask this court to find that the February 17, 1986 applications constitute enforceable contracts, thereby, entitling them to the

---

contract, included in the plaintiffs' Appendix, shows Barrett and James Rochman's signatures, together with a date of January 13, 1987, two days before the CCC representative executed the form.

**6.** The regulations set forth in 7 C.F.R. § 780 (1987) provide that participants who are dissatisfied with determinations made at the county,

state or federal level may obtain reconsideration and an informal hearing by filing a request. An adverse decision at one level may be appealed at the next level, and the determination of the Deputy Administrator, State and County Operations is the final administrative action on the matter. *Raines v. United States*, 12 Cl.Ct. 530, 532–33 n. 2 (1987).

one-year, one-time bonus authorized by the CCC for new CRP contracts submitted during the fourth signup period, and accepted during 1987. Specifically, plaintiffs request the following relief:

1. That plaintiffs be awarded a bonus payment in the amount of approximately $16,000 or more from the Commodity Credit Corporation under the contract dated February 17, 1987.

2. For such other and further relief as this court may deem just and proper in addition to the costs of this action.

Defendant, however, asserts that the August 13, 1986 contract is valid and that the February 17, 1986 CRP forms submitted by the plaintiffs do not constitute enforceable contracts because the forms fail to reflect action by an authorized government agent. Therefore, the defendant argues that the plaintiffs are not entitled to the bonus.

## DISCUSSION

■■■ A motion to dismiss, pursuant to RUSCC 12(b)(4), based on a challenge to the jurisdiction of the court, requires that the court reach its decision based on the evidence presented by the parties. The Supreme Court has clearly articulated, and the United States Court of Appeals for the Federal Circuit has explicitly adopted, the general standards for weighing evidence presented in a complaint when deciding a motion to dismiss, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989). If a motion to dismiss for lack of subject matter jurisdiction challenges the truth of the jurisdictional facts alleged in the complaint, the trial court may also consider relevant evidence in order to resolve disputed facts. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). The court must accept as true any undisputed allegations of fact made by plaintiff. In evaluat-

ing a motion to dismiss for failure to state a claim, the court must presume all factual allegations in the complaint are true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). *See also Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686. When facts relevant to the issue of jurisdiction are disputed, the court is required to decide those facts. *Reynolds,* 846 F.2d at 747. The burden is on the plaintiff to establish jurisdiction. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Pasco Enters. v. United States,* 13 Cl.Ct. 302, 305 (1987); *Metzger, Shadyac & Schwartz v. United States,* 10 Cl.Ct. 107, 109 (1986). A motion to dismiss should not be granted by the court "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In a determination of the validity of the motion to dismiss "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Moreover, contrary to plaintiffs' bald assertion that the 1987 applications are valid contracts, thus entitling them to the bonus, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." 2A Jeremy C. Moore, et al., Moore's Federal Practice, ¶ 12.07 [2.–5] (2d ed. 1992).

■■■ The issue to be resolved is whether plaintiffs state a claim for relief which is cognizable in this court. We find that they do not. In order to obtain the special bonus under the CRP for new 1987 contracts, plaintiffs would have had to fulfill three requirements. First, they were required to submit a bid for a 1987 contract for the CRP during the fourth signup period, February 9, 1987 through February 27, 1987, at the ASCS office in Anna, Illinois. Second, plaintiffs' application to the CRP must have been accepted by an authorized CCC officer. Third, plaintiffs were required to sign a new 1987 contract for the CRP pro-

gram, and, in fact, not have already been part of the CRP program.

■ In order to consider plaintiffs as new customers for the purposes of the 1987 special bonus, this court would have to overturn the Deputy Administrator's decision that the August 15, 1986 contract was valid. The offer by the government to grant a signup bonus was limited to new CRP contracts which were submitted during the fourth signup period. The offer was not retroactive for corn base acreage under CRP contracts previously signed, and in effect. Pursuant to the executed August 15, 1986, contract, plaintiffs had clearly enrolled corn base acreage. The decision of the Deputy Administrator that plaintiffs did not qualify for the bonus was correct in light of the CRP contract previously executed by the plaintiffs on August 15, 1986, allocating corn based acreage for the 1987 CRP program. Moreover, the decision of the Deputy Administrator is the final step in the appeals process. "Determinations made by the Deputy Administrator shall not be appealable by the producer or participant." 7 C.F.R. § 780.9(a) (1987).

The Supreme Court has set out the standard for review of an agency's decision.

In all cases agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements. 5 U.S.C. §§ 706(2)(A), (B), (C), (D) (1964 ed. Supp. V). In certain narrow, specifically limited situations, the agency action is to be set aside if the action was not supported by 'substantial evidence.' And in other equally narrow circumstances the reviewing court is to engage in a *de novo* review of the action and set it aside if it was 'unwarranted by the facts.' 5 U.S.C. §§ 706(2)(E), (F) (1964 ed., Supp. V).

*Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 413–14, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971).

The standard of review concerning determinations of eligibility for agricultural price support programs was ably discussed in a recent United States Claims Court case as follows:

To the extent that the plaintiffs are making a claim for money damages under the Tucker Act, 28 U.S.C. § 149(a)(1) (1988), the United States Claims Court has jurisdiction to review ASCS determinations concerning price support and production adjustment programs. *Willson v. United States,* 14 Cl.Ct. 300, 304 (1988); *Raines v. United States,* 12 Cl.Ct. 530, 534 (1987). Section 1429, of title 7 of the United States Code, provides in pertinent part that determinations made by the Secretary of Agriculture under the Agricultural Act of 1949 'shall be final and conclusive * * *.' *De novo* judicial review is therefore impermissible. *Durant v. United States,* 16 Cl.Ct. 447, 452 (1988). Further, review of the factual findings made by the ASCS is precluded by 7 U.S.C. § 1385 (1988). *Willson,* 14 Cl.Ct. at 304. Review of the legal determinations made by the ASCS, however, including whether a decision is arbitrary and capricious, are subject to review. Such review by this Court, of the ASCS' legal determinations under 7 U.S.C. § 1429 'is concededly 'very limited,' but not nonexist[ant]: we need to consider the wisdom of the decisions, but must scrutinize whether the officials acted rationally and within their statutory authority.' *Raines,* 12 Cl.Ct. at 536. Therefore, '[t]his court's function is to review the facts as determined by ASCS and to ascertain whether a rational basis in the administrative record underlies the decision reached.' *Knaub v. United States,* 22 Cl.Ct. 268, 275 (1991).

*Schultz v. United States,* 25 Cl.Ct. 384, 388 (1992).

In the instant case, the Deputy Administrator's determination that the August 15, 1986 contract was valid should only be overturned if it was "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Durant v. United States,* 16 Cl.Ct. 447, 452 (1988), (citing *Pasternack v. United States,* 12 Cl.Ct. 707, 710 (1987)).

Although the plaintiffs do not explicitly state their reasons for wishing to terminate their August 15, 1986, CRP contract, it is presumably for the purpose of qualifying for the bonus announced for new 1987 CRP contracts. When Secretary of Agriculture Richard E. Lyng announced the payment of the one-year, one-time bonus, he stated, "Farmers who want to bid to enter their highly erodible cropland into USDA's 10-year Conservation Reserve Program may do so during the program's fourth signup period from Feb. 9 through 27.... This offer is limited to new CRP contracts effective beginning with the 1987 crop year. It is not retroactive for corn base acreage under CRP contracts already signed." The release further noted that the "bonus" rental payments would be made only after 1987 CRP contracts were signed by a county ASCS committee (COC) representative.[7]

■ Therefore, upon review, the court finds that the decision of the Deputy Administrator, in the case at bar, that the 1986 contract was a valid contract, should not be overturned. The Deputy Administrator first determined that not all owners are required to sign a CRP contract. Furthermore, contrary to assertions by the plaintiffs, Illinois law is not applicable to the instant action. Federal law controls the interpretation of a contract to which the federal government is a party. *See Clearfield Trust Co. v. United States*, 318 U.S. 363, 366–67, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943); *Forman v. United States*, 767 F.2d 875, 879–80 (Fed.Cir.1985); *Seaboard Lumber Co. v. United States*, 15 Cl.Ct. 366, 369 (1988), *aff'd*, 903 F.2d 1560 (Fed. Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1308, 113 L.Ed.2d 243 (1991). Therefore, the rights and obligations of the CCC are governed by federal, rather than state law. *Cargill, Inc. v. Commodity Credit Corp.*, 275 F.2d 745, 751 (2d Cir.1960). Thus, the result reached by the Deputy

Administrator was neither arbitrary nor capricious when he determined that not all owners were required to sign the CRP Agreement pursuant to the applicable federal regulations. 7 C.F.R. 704.10(a).

Second, plaintiffs contend that the CCC was required to sign the August 15, 1986 contract within a thirty-day period. However, the language of the contract merely states that the offer shall be irrevocable for a period of thirty days, subsequent to the close of the applicable signup period. Nowhere in the regulations or in the contract is it stated that the CCC must accept the contract within thirty days. Only the applicant and the owners of the cropland to be placed in the CRP program must sign the CRP contract within the dates established by the CCC. 7 C.F.R. § 704.10(d) (1987). Thus, the Deputy Administrator's decision in this regard was also not arbitrary or capricious, and the contract was valid.

■ In order to prevail, plaintiffs must be able to prove that they are entitled to the $16,000 signup bonus, pursuant to their February 17, 1987 applications to enter the CRP. We find that they cannot do so. Given the validity of the August 15, 1986 contract, plaintiffs cannot qualify as new customers. But, even if the 1986 contract were to be considered invalid, for argument's sake, the 1987 contract applications were not consummated into valid contracts. In order to prove a valid contract, plaintiffs must show "mutuality of intent to contract, offer and acceptance, and that the officer whose conduct is relied upon had actual authority to bind the government in contract." *See H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1575 (Fed.Cir. 1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985); *Howard v. United States*, 21 Cl.Ct. 475, 478 (1990), *aff'd*,

---

7. Defendant omitted a page from its Appendix which was relevant to the issue before the court. On November 13, 1992, this court ordered that the missing page be filed, and defendant subsequently complied with the order. The excluded page was part of a USDA Notice CRP–54, which outlined the rules for the CRP fourth signup period. Under the section concerning bonus payments, the document clearly states that, "Producers may not designate land accepted for CRP contract under previous signups." This document also makes it clear that "Producers may not cancel existing CRP–1's and pay liquidated damages to: 1) Become eligible for corn base reduction 'bonus' rental payments."

951 F.2d 1267 (Fed.Cir.1991), *reh'g denied en banc,* (Fed.Cir. Feb. 20, 1992).

We agree with the Court of Appeals for the Sixth Circuit that:

> It is clear that the rights and obligations of the CCC and parties contracting with it depend on terms and conditions of the particular contract, construed and enforced in accordance with general principles of law and in light of applicable statutes.

*Tennessee Burley Tobacco Growers' Ass'n v. Commodity Credit Corp.,* 350 F.2d 34, 43 (6th Cir.1965), *cert. denied,* 383 U.S. 907, 86 S.Ct. 886, 15 L.Ed.2d 662 (1966).

Although the February 17, 1987, CRP applications were signed by plaintiffs during the relevant fourth signup period of February 9 through February 27, 1987, these applications were not signed by a CCC representative.[8] In order to constitute a binding contract, the CRP contract must be signed by the plaintiffs and by an authorized CCC representative. 7 C.F.R. § 704.2(a)(8). Plaintiffs had notice of this requirement because the appendix to the CRP application signed by plaintiffs specifically states that the contract becomes effective only when signed by the operator or the producers on the farm and an authorized representative of CCC.

For plaintiffs' February 17, 1987 CRP applications to qualify as new 1987 contracts, plaintiffs must also prove that they did not enter into a pre-existing CRP contract. Plaintiffs are unable to overcome this obstacle.[9] We hold that the August 15, 1986, CRP contract, which became effective for the 1987 crop year on January 1, 1987 when it was signed by CCC representative Keith Glasco and was a valid and binding contract. Under the applicable regulations, which state: "[i]n order to enter into the CRP, the owner *or* operator must enter into a CRP contract with CCC," 7 C.F.R. § 704.10(a) (emphasis added), the Deputy Administrator properly upheld the contract. Likewise, the contract language states: "[t]he contract is effective when signed by the operator and each of the producers [10] on the farm and an authorized representative of CCC." In the present instance, both the operator at the time, James Rochman, and two of the owners, Barrett and Marilyn Rochman, signed the August 15, 1986 CRP form. The August 15, 1986 contract was valid and bears the requisite signatures. Nowhere in the regulations or the contract is it specified that all the owners were required to sign the CRP form.

Even assuming, arguendo, that the February 17, 1987, CRP applications could be considered new contracts, from a new customer, for purposes of qualifying for the special bonus, plaintiffs have failed to prove that the CCC was required to rescind

---

**8.** A CRP contract is defined as "the approved agreement, including the conservation plan, entered into in writing between CCC and the participant which sets forth the terms and condition for participation in the CRP established under this part." 7 C.F.R. § 704.2 (1987).

**9.** Although some might argue that different farms were involved in each of the applications, and thus the February 17, 1987 application would be a "new contract" for Farms # 2087 and 2088, because the first CRP contract involved Farm # 1833, the regulations state that a "farm shall include all land operated by one person as a single farming unit" unless "the land is under separate ownership." 7 C.F.R. § 719.3 (1987). Here, plaintiff James Rochman was the operator of all of the farmland owned by plaintiffs. In addition, the farmland in question was not under separate ownership. Plaintiffs Barrett Rochman, Marilyn Rochman and James Rochman signed the August 15, 1986 CRP contract as owners of Farm # 1833, and plaintiffs allege that

William Burns was also an owner. The same four plaintiffs signed the February 17, 1987, CRP applications for Farm # 2087 and Farm # 2088, with the exception that William Burns did not sign as an owner of Farm # 2088. Thus, there is common management and substantial common ownership of the land such that a single farming unit may be found.

**10.** The contract and the regulations include the following definitions: *"Operator* means the producer who is in general control of the entire farming operation on the farm during the program year, as determined in accordance with 7 CFR Part 719." *"Producer* means a person who as owner, landlord, tenant, or sharecropper shares, or would have shared had the crop been produced, in the risk of producing the crop (or shares in the proceeds therefrom) as determined in accordance with 7 CFR Part 713. The term 'producer' as used in this contract shall include both the 'operator' and other producers of the crop on the farm."

the previous valid contract or to accept plaintiffs' new applications. Under the applicable regulations, the "CCC may reject any and all offers to place land into the CRP." 7 C.F.R. § 704.10(f). Thus, the CCC did not exceed its authority by refusing to accept and not signing plaintiffs' subsequent CRP applications.

## CONCLUSION

The defendant's motion to dismiss for failure to state a claim upon which relief can be granted is in large part based on defects in the complaint, under RUSCC 8(a)(2). The Rule is unambiguous in its requirement that a pleading which sets forth a claim for relief "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief...." Although plaintiffs contend that they are entitled to the CRP bonus under the facts set forth in the complaint, a reading of the complaint evidences no claim upon which relief can be granted in the document. Consequently, the plaintiff's complaint fails to meet the requirements of RUSCC 8(a)(2). Plaintiffs fail to state a claim upon which relief can be granted under RUSCC 12(b)(4).

For the reasons stated above, defendant's motion to dismiss is, hereby, GRANTED. The Clerk of the Court is directed to dismiss plaintiffs' complaint.

IT IS SO ORDERED.